Kemp A. **HARRISON**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 18093.

United States Court of Appeals Fifth Circuit.

May 31, 1960.

Rehearing Denied July 13, 1960.

Wallace Miller, Jr., Macon, Ga., Miller, Miller & Miller, Macon, Ga., of counsel, for appellant.

Floyd M. Buford, Asst. U. S. Atty., Macon, Ga., Frank O. Evans, U. S. Atty., Macon, Ga., Earle B. May, Jr., Bainbridge, Ga., John C. Bracy, Asst. U. S. Attys., Macon, Ga., for appellee.

Before TUTTLE, CAMERON and JONES, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from a judgment of conviction and sentence for violation of 18 U.S.C.A. § 1001 prohibiting knowingly and willfully falsifying, concealing or covering up "by any trick, scheme, or device a material fact" in a "matter within the jurisdiction of [a] department or agency of the United States", and of 18 U.S.C.A. § 1005 which prohibits an officer, director, agent or employee of a federally insured bank "with-

out authority from the directors of such bank" to make, draw, issue or put forth any bill of exchange.

In addition to the general grounds, that is, the absence of evidence on which to base a conviction, appellant complains of the court's charge to the jury, a refusal to give requested charges, the curtailing of defendant's rights to cross examination, the admission of evidence and other subsidiary points.

The evidence produced in the trial, largely admitted by appellant, who was sworn as a witness, would fully justify the jury in finding the following facts:

On January 17, 1958 appellant was a director of the Citizens State Bank of Warner Robins, Georgia. He was also mayor of Warner Robins. He was also engaged in business as a druggist. On that day his total indebtedness to the bank amounted to $35,500.85. At that time the rules of the bank as adopted by the Board of Directors prohibited direct indebtedness of a director to exceed $20,000. The rules of the bank also prohibited overdrafts. Appellant's indebtedness to the bank included an overdraft of $6,600.85 in the checking account of Victory Drug Company (a proprietorship owned by appellant).

On January 17, 1958 appellant agreed with one Fountain, the President of the bank, a co-defendant, who did not appeal his conviction, that appellant would give the bank a promissory note in the name of the City of Warner Robins for the sum of $20,000 and that Fountain would issue appellant the bank's Cashier's check for the net proceeds of such a loan for ninety days, in the sum of $19,700. This was done, and at Fountain's direction the entire sum was issued to discharge $19,750 of indebtedness owed by appellant and a credit of $50 was given to the Victory Drug Company checking account, representing a rebate of unearned interest on its note.

Following an investigation by the directors of the bank and other officials of the city on February 4th, appellant obtained funds sufficient to pay off the

$20,000 Warner Robins note. It was undisputed that the directors of the bank had not authorized appellant to issue a Cashier's check whose proceeds were to be used to bring appellant's indebtedness to the bank into an apparent balance. It is also undisputed that the bank's Discount Committee was required to approve "all applications for loan and credit" and that no such approval had been given with respect to this $20,000 loan.

The language of the statute under which appellant was convicted on Count 3 of the indictment is the general false statements statute.[1] This section makes criminal the knowing and willful falsification, concealment or covering up by any trick, scheme, or device of a material fact in any matter within the jurisdiction of any department or agency of the United States. Appellant earnestly contends that since every entry made on the books of the bank was technically correct, that is, that there was actually a note bearing the name of the City of Warner Robins (thus the entry on the Note Register to that effect was not false), that a deposit had actually been made to discharge the notes of appellant and a deposit had been made to bring the overdraft into line (and thus the bank's entries thereabout were not false), there is no false statement on which appellant could be convicted. In support of this proposition appellant cites Twining v. U. S., 3 Cir., 141 F. 41, and Crenshaw v. U. S., 6 Cir., 116 F.2d 737. These cases are inapplicable to the case at bar because those prosecutions were based on a false entry statute. The Courts held that if the entries were, in fact, not false, no violation of such a statute was proved, even though the transactions thus accurately depicted were unauthorized or even fraudulent.

Here the prosecution is not based on a false entry statute but, in Count 3, it is based on the concealment or covering up by a trick or device a material fact, and in Count 4, on the issuing of a bill of exchange without the authority of the directors.

We think it perfectly clear that the fact that the note which purported to be the legal obligation of the City of Warner Robins was not in fact such legal obligation but was, in fact, a device for the obtaining of credit by appellant, was such a material fact as contemplated within Section 1001. When the jury found, as it was amply justified in doing, that appellant knowingly and willfully falsified, concealed or covered up this material fact, he was guilty of the offense as charged.

The next contention made by appellant attacks the conviction on Count 4, which is based on 18 U.S.C.A. § 1005 [2].

1. 18 U.S.C.A. § 1001 provides as follows: "Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,-000 or imprisoned not more than five years, or both."

2. This section, so far as material here, provides as follows:
"Whoever, being an officer, director, agent or employee of any Federal Reserve bank, member bank, national bank or insured bank, without authority from the directors of such bank, issues or puts in circulation any notes of such bank; or

"Whoever, without such authority, makes, draws, issues, puts forth, or assigns any certificate of deposit, draft, order, bill of exchange, acceptance, note, debenture, bond, or other obligation, or mortgage, judgment or decree; or

"Whoever makes any false entry in any book, report, or statement of such bank with intent to injure or defraud such bank, or any other company, body politic or corporate, or any individual person, or to deceive any officer of such bank, or the Comptroller of the Currency, or the Federal Deposit Insurance Corporation, or any agent or examiner

Again, it must be made plain that appellant was not charged under the "false entry" section of the statute. He was charged, "being an officer director, agent or employee of * * * an insured bank" with having, "without authority from the directors of such bank", issued a bill of exchange. It is clear that the Cashier's check was a bill of exchange. Hoss v. United States, 8 Cir., 232 F. 328.

██ As has been stated above, appellant admits that he knowingly and willfully executed what purported to be a promissory note of the City of Warner Robins for the purpose of obtaining the proceeds of such note to discharge indebtedness of his own to the bank. Appellant's brief states the matter as follows:

"In a moment of weakness, and to comply with the directive of the Board of Directors, defendant Harrison went to the bank and requested defendant Fountain to lend to the City of Warner Robins, on a 90-day note, $20,000. Money had previously been loaned to the City by the bank on such a note, and only on the signature of the Mayor, in November of 1957, in the amount of $5,000. Defendant Fountain accepted the note of the City signed by defendant Harrison, and deducted $300 interest, and issued a cashier's check of the bank in the amount of $19,700, payable to the City, and delivered it to Harrison.

"Harrison endorsed the check and requested of the bank that the amount of the check be credited to his personal obligation to the bank, in the amount of $12,000 toward his notes, and the remainder toward his overdraft in his checking account; and this was done."

Further, appellant stated in his brief "Defendant Harrison was intending to use, improperly, he admitted, and no one will deny, the good name and credit of the City of Warner Robins for his personal benefit until he himself could rework his loans and obtain sufficient funds to comply with the bank directors' directive of January 14."

In light of the undisputed fact that the drawing of a Cashier's check intended by the official of the bank to be for the benefit of appellant was not authorized by the directors of the bank but was, in fact, an effort to contravene the action taken by the directors respecting both the debt limit and overdraft of a director, the jury was fully justified in finding appellant guilty of the violation of this section.

 It is to be noted that the indictment charged in Court "that the issuing of the Cashier's check was done" with intent to defraud the bank and the depositors thereof. However, even a casual reading of this section makes plain that no specific intent to injure or defraud a bank is an ingredient in the offense charged in the first two paragraphs of Section 1005. Each of the first three paragraphs states a separate and distinct crime. Neither the first nor the second requires proof of any intent to injure or defraud the bank. The acts described in those two paragraphs are made criminal per se. We find very little case law on this subject. In fact, the only case found is United States v. Johnson, Ohio 1879, 4 Cir., Law Bul. 361 Fed.Cas.No.15,483. This case is cited for the proposition that an intent to injure or defraud was not necessary to complete the crime of drawing bills of exchange or signing notes without authority of bank directors. The statute itself seems too plain to require judicial construction. The fact that the indictment charged that the crime prohibited in the first two paragraphs was committed "with the intent to defraud said bank and the depositors thereof" does not require that proof of such intent be made in order to sustain

---

appointed to examine the affairs of such bank, or the Board of Governors of the Federal Reserve System—

"Shall be fined not more than $5,000 or imprisoned not more than five years, or both."

a conviction of the crime that is complete without it. See United States v. Steiner Plastics Mfg. Co., 2 Cir., 231 F.2d 149; Frazier v. United States, 82 U.S.App.D.C. 332, 163 F.2d 817.

■ We think it quite clear that there was ample evidence from which the jury could find the necessary intent to defraud the bank if that had been a necessary ingredient of the crime. It would be a fraud on the bank if the bank's funds were caused to be so manipulated as to bring appellant's account into apparent compliance with the rules of the bank when, in fact, if the truth were known, the transaction producing this effect was a total sham. It is not necessary that actual damage be shown in order to constitute fraud on the bank.

■ The next most important point made by appellant is the Court's charge "generally, for example it is presumed that one intends the consequences of his act" and further, "and it is the law that a person intends the usual and probable consequences of his act".[3] Since as we have stated above, the ingredient of specific intent to defraud is not a part of the offense charged the Trial Court actually gave the defendant the benefit of a more favorable charge than was required, since the Court charged the jury that it must find beyond a reasonable doubt that this intent existed in order to convict. Since such finding was not necessary under the charge as defined in the statute, the Court's statement as to the presumption arising when one performs certain acts would be entirely harmless. The element of specific intent is not an ingredient under the offense charged in Count 3. It was, therefore, used by the Court only in connection with the crime charged under Section 1005. Actually, there is no dispute about the fact that appellant did the acts which under the first two paragraphs of Section 1005 constitute the offense of which he was convicted. It was beneficial to appellant, and therefore not error as to him that the Court further charged that "he was also entitled to an acquittal unless an intent to defraud was proved beyond a reasonable doubt", even though in defining "intent" the Court stated, "it is presumed that one intends the consequences of his act".

■ We think it appropriate to say that where a specific intent to defraud is a necessary ingredient in a crime, as it would be if this indictment had been brought under the third paragraph of Section 1005, (the making of a false entry "with the intent to injure or defraud such bank"), it would be improper for the Court to charge such a presumption as that "it is presumed that one intends the consequences of his act", if the language could fairly be construed

3. The entire paragraph in which this language is contained was as follows:

"You would not be authorized in finding the Defendants guilty of Count 4, unless you find that the Government has established beyond a reasonable doubt that the Defendants were officers and directors of the Bank insured by the FDIC and acting in that capacity, and with the intent to defraud the Bank and its depositors, did, without authority from the directors of the Bank, make and issue a bill of exchange and caused the same to be done, as alleged in the indictment.

"I have used here several times the word 'intent'. Members of the jury, intent is a material element in all of these counts charged in this indictment, and it must be proved beyond a reasonable doubt before you can convict. Intent is something, of course, that exists in a man's head, in his mind. It is impossible for you, as jurors to enter into the mind of the Defendants and to determine what they intended be done. Generally, we have some guides well established, however, to assist you in that regard. Generally, for example, it is presumed that one intends the consequences of his act. His intent has to be judged, at least, by his intelligence, as shown by the evidence; his experience in life and knowledge, as shown by the evidence; and generally by judging him as a reasonably prudent man experienced in every day affairs of life, as shown by the evidence, and as such men judge each other in their every day relationship with one another. And it is the law that a person intends the usual and probable consequences of his act."

to permit the jury to find a verdict of guilt merely upon proof of a false entry with no affirmative proof of an intent to defraud. This is so because it is not true that every making of a false entry in a bank's books is done with the intent to defraud the bank. Such an entry may, while false, be entirely innocently made. The specific intent required by the statute cannot be presumed. Here, however, the question does not arise for, as we have said, the issuing of the Cashier's check of the bank without authority of the directors is itself a crime regardless of any intent to injure or defraud the bank.

We have carefully considered the appellant's contentions that he was prejudiced by refusal of the Trial Court to give certain requested charges. Some of these bear on the matter of intent, just discussed, and the refusal to deal with them of course, is governed by what we have already said. We find no error in the refusal to give the remaining requested charges, nor as to the other matters raised by appellant.

The judgment is affirmed.