**ÚNITED STATES of America, Plaintiff-Appellee,**

v.

**Arthur R. MAYR, Jr., and Carl L. Windham, Defendants-Appellants.**

**No. 72-3615.**

United States Court of Appeals, Fifth Circuit.

Nov. 15, 1973.

Rehearing Denied Jan. 17, 1974.

---

William A. Meadows, Miami, Fla., for Mayr.

Robert J. Randolph, Stuart, Fla., for Windham.

Robert W. Rust, Charles O. Farrar, Jr., Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before WISDOM, GODBOLD and INGRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

Arthur R. Mayr, Jr. and Carl L. Windham were convicted [1] by a jury of violating 18 U.S.C. § 371 by conspiring to commit the following offenses: (1) willfully and knowingly making a false entry in the books of the First Bank of Indiantown, Indiantown, Florida, with the intent to injure and defraud such bank; [2] and (2) willfully and knowingly misapplying funds of the bank with the same intent. [3] The defendants' principal

---

1. Defendant Windham was charged only in the conspiracy count, Count One, of the indictment. Mayr was acquitted of the substantive violations of 18 U.S.C. § 656 (see note 3, *infra*), which went to the jury under Counts Four through Ten. Counts Two and Three related to alleged substantive violations by Mayr of 18 U.S.C. § 1005, but were dismissed at trial.

2. 18 U.S.C. § 1005 provides in pertinent part as follows: .
    "*Whoever makes any false entry in any book, report, or statement of such bank with intent to injure or defraud such bank,* or any other company, body politic or corporate, or any individual person, or to deceive any officer of such bank, or the Comptroller of the Currency, or the Federal Deposit Insurance Corporation, or any agent or examiner appointed to examine the affairs of such bank, or the Board of Governors of the Federal Reserve System—

" Shall be fined not more than $5,000 or imprisoned not more than five years, or both." (Emphasis added.)
    The indictment charged solely a violation of the italicized portion of this paragraph.

3. 18 U.S.C. § 656 reads:
    "Whoever, being an officer, director, agent or employee of, or connected in any capacity with any Federal Reserve bank, member bank, national bank or insured bank, or a receiver of a national bank, or any agent or employee of the receiver, or a Federal Reserve Agent, or an agent or employee of a Federal Reserve Agent or of the Board of Governors of the Federal Reserve System, embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank or any moneys, funds, assets or securities intrusted to the custody or care of such bank, or to the custody or care of any such agent, officer, director, employee or receiver, shall be fined not more than

allegation of error is that the evidence developed at trial is insufficient to convict them of the offenses charged in the indictment. We affirm.

The evidence revealed without contradiction that on January 4, 1972, Mayr, president of the First Bank of Indiantown, caused two checks, one for $31,000 and the other for $58,000, to be entered on the bank's books as deposits to two overdrawn accounts of the defendant Windham. The signed blank checks had been left at the bank by Windham in mid-December; Mayr was to complete and use them as needed. Mayr held the checks until the morning of January 4, 1972, when the bank examiners were due to arrive. Prior to the time the examiners froze all accounts, Mayr filled in the checks, made out deposit slips to Windham's two overdrawn accounts, and began processing the checks by regular banking procedures. These deposits were sufficient to remove the overdraft status of the accounts. The two checks were drawn on a Canadian bank in which Windham had previously maintained an account. Both Windham and Mayr knew that this account did not contain sufficient funds to cover the checks.

The jury would have been warranted in concluding that the defendants' actions amounted to nothing more than a sham transaction designed to conceal from the bank examiners the true condition of the bank and Windham's accounts in particular. Although this was not the violation of § 1005 charged in the indictment, we hold that these facts are adequate to support a finding of an intent to injure and defraud the bank.

█ As a result of the sham deposits, Windham and Mayr were able not only to deceive the bank examiners, but also to relieve for another month a possible confrontation with the bank's board of directors had the status of Windham's accounts been specifically called to their attention by the examiners. Since the checks were not returned from the Canadian bank until February 3, 1972, almost one month after the bank examination, Windham's accounts remained in the black for this period of time. We agree with the observation made in a similar situation by the court in Richardson v. United States, 181 F. 1, 7–9 (3rd Cir., 1910).

> "It is further said . . . that there was a variance as to the purpose with which the falsification of the reports to the Comptroller was made, which was to deceive that officer, and and not to injure the bank or to deceive the directors or the agents appointed to examine it as charged.
>
> . . .
>
> ". . . The purpose of such reports being to enable the Comptroller and the examiners acting under him the better to supervise, and, if necessary, to correct the administration by its officers of the bank's affairs, it is most obvious, that a misrepresentation, the effect of which is to mislead and deceive either of them, could hardly fail to operate to the injury of the bank. And those therefore who change and falsify the entries in such reports in the way charged, having committed themselves to this possible result, must be regarded as having intended that it should come about. The intent to injure and defraud the bank in the present instance, was thus rightly charged, and it was for the jury to say whether it had been made out, as to which they had the right to judge by the nature of the items falsified, their relation to the condition and conduct of the bank's affairs, and the circumstances under which the falsification was done."

Although the evidence leads to the conclusion that Mayr and Windham primarily intended to deceive the bank examiners, it is also adequate to support the jury's conclusion that they intended in

---

$5,000 or imprisoned not more than five years, or both; but if the amount embezzled, abstracted, purloined or misapplied does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both."

some manner to injure and defraud the bank as a part of the same activity. *See* Harrison v. United States, 279 F.2d 19, 24 (5th Cir., 1960), cert. den., 364 U.S. 864, 81 S.Ct. 105, 5 L.Ed.2d 86; Baiocchi v. United States, 333 F.2d 32, 35 (5th Cir., 1964). *See generally* United States v. Corbett, 215 U.S. 233, 30 S.Ct. 81, 54 L.Ed. 173 (1909).

It is unnecessary to review in detail the remainder of the evidence developed at trial. We are aware that the case was hardly cut and dried and agree with the trial court that Mayr's actions were not as egregious as they might have been. Nonetheless, the final decision was for the jury. In the closing arguments the issues were sharply drawn and the jury's attention focused on the crucial elements of the case. The jury was thoroughly and fairly instructed on the defendants' theories of defense. That the existence of overdrafts are not, in and of themselves, a foundation for criminal liability was clearly explained. Finally, the court gave more than adequate instructions on the necessary elements of the offense charged under § 1005 and emphasized that a specific intent to injure and defraud the bank had to be proved beyond a reasonable doubt. In these circumstances the jury's decision that the false entries were made with the intent to injure and defraud the bank cannot be overturned.

We turn briefly to that part of the conspiracy count which charged defendants with conspiring to misapply the funds of the bank. Our previous discussion of defendants' argument on the false entry element of the conviction illustrates the basis for the conclusion that the defendants conspired to misapply the bank's funds. By making the false entries Mayr, in effect, extended to Windham $88,000 of the bank's credit without interest or security. The basis for finding misapplication does not arise from the fact that Mayr allowed Windham to accumulate $88,000 of overdrafts prior to December 1, 1971, but from the activities the men undertook to conceal this status from the bank examiners and the bank directors until at least February 3, 1972. In short, there is a sufficient evidentiary foundation to support the jury's decision that Windham and Mayr conspired to misapply bank funds.

The defendants' other assertions of error are without merit, and the convictions are therefore affirmed.