UNITED STATES of America, Plaintiff-Appellee,

v.

Albert S. HART and William Robert Grissom, Defendants-Appellants.

Nos. 76–2305, 76–2306.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 3, 1977.

Decided March 31, 1977.

Rehearing and Rehearing En Banc Denied May 19, 1977.

VII, IX, XI and XIV). Hart was sentenced to periods of imprisonment of three months and probation of eighteen months, and Grissom was sentenced to periods of imprisonment of six months and probation of twenty-four months.

They now appeal, claiming that the government's evidence was insufficient to support their convictions and that the entries made were not false as a matter of law. They also contend that the trial judge erred in accepting opinion testimony as to the falsity of the entries, in limiting verbal exchanges between them and their counsel during trial, and in charging the jury on the meaning of "intent to deceive" and "intent to defraud."

Grissom was vice-president of the bank in charge of the investment division. Hart was the principal owner of A. S. Hart and Company, an investment company dealing in municipal and government securities in the Memphis area. They were involved in two types of transactions, joint ventures in "when issued" trading and "parking" transactions. The investment division of the bank supplied the means.

"When issued" trading refers to the purchase or sale of government bonds prior to their date of issuance by the government. Typically, the government will announce a future date for the issuance of its securities, and investors will then bid on the rights to purchase a share of the issue. Prior to the issue date, contracts for purchase of the bonds may be made above or below their par value, with the buyer only obligated to pay for the bonds "when issued."

On eleven occasions between March, 1971 and April, 1973, Grissom and Hart formed joint ventures for the purpose of buying when issued securities from the bank, under agreements to share the profits and losses equally. The bank had a policy against self-dealing by its employees, and Grissom's interest in these purchases was therefore a secret one. The purchases were recorded in the bank's records as sales to Hart only.

B. C. Clifton, J. Brooke Lathram, Memphis, Tenn., for defendants-appellants in 76–2305.

Thomas F. Turley, Jr., U. S. Atty., Glen G. Reid, Jr., Memphis, Tenn., for plaintiff-appellee in both cases.

William W. Dunlap, Jr., Manire, Harris, Shelton & Dunlap, James M. Manire, Memphis, Tenn., for defendants-appellants in 76–2306.

Before CELEBREZZE and PECK, Circuit Judges, and FEIKENS,* District Judge.

FEIKENS, District Judge.

Defendants-Appellants Albert S. Hart (Hart) and William Robert Grissom (Grissom) were charged with and convicted of a conspiracy to make and to cause to be made false entries in a bank's (Union Planters National Bank of Memphis) books and to misapply and cause to be misapplied money and securities of the bank, in violation of Title 18, United States Code, Section 371 (Count I); they were also convicted of the substantive crimes of making and causing to be made false entries in the bank's books and aiding and abetting therein in violation of Title 18, United States Code, Sections 1005 and 2 (Counts II, IV, VI, VIII, X, XII and XIII).

They were acquitted on seven substantive counts of wilful misapplication of funds and aiding and abetting therein (Counts III, V,

* Honorable John Feikens, United States District Judge for the Eastern District of Michigan, sitting by designation.

740

Hart and Grissom were charged in the indictment with only one of these joint ventures; it concerned the purchase of when issued Federal Land Bank Bonds, with an issue date of April 20, 1971. Hart and Grissom agreed on or about April 8, 1971, to purchase $1,000,000 of these bonds from the bank; the order was placed solely in Hart's name. By April 20, the bonds had declined in value by $15,000. Hart did not pay the bank for the bonds at that time, as he was obligated to do; instead, Grissom had the bank purchase them for $1,000,000 and carry them in the bank's trading account. Hart's original purchase order was subsequently lost or misplaced.

On June 15, 1971, Hart borrowed $1,000,000 from the Houston National Bank and used these funds to purchase the bonds from Grissom's bank, pledging the bonds as security for the loan. June 15 was recorded as the initial or original purchase date on the bonds, to conceal Hart's earlier commitment to pay the purchase price by April 20, 1971. The loan expired in 30 days, and so on July 15, Grissom arranged for his bank to purchase the bonds back from Hart for $965,000; their market value on that date was $951,250. This transaction was recorded as a final sale to Hart only. Left undisclosed in the bank's records were Grissom's interest in this sale to the bank and Grissom's commitment, on behalf of the bank, to resell the bonds to Hart at any time for the same price. On October 19, 1971, the bonds were resold to Hart for $965,000, who then sold them back to the bank that same day for $984,375; Grissom then immediately had the bank sell the bonds to another investor for $985,312.50, the prevailing market price.

Grissom and Hart did not realize a profit on this venture, though they were more successful on other occasions. On March 2, 1974, Hart, Grissom and Thomas Gaines, another employee in the bank's investment division, jointly contracted to purchase $500,000 of when issued government securities from the bank. Upon their resale to the bank on March 5, 1971, each realized a profit of $833.33. Grissom and Gaines were

paid their shares in checks issued to "Mrs. Grissom" and "Mrs. Gaines." Five of their other joint ventures from 1971 through 1973 also realized profits, totaling $36,937.50.

A "parking" transaction refers to a procedure by which the bank, through Grissom, sold certain securities to Hart at the end of one quarterly period subject to an undisclosed agreement to repurchase them at the beginning of the next quarterly period. The purpose of this arrangement was to avoid compliance with the regulations of the Comptroller of the Currency, which require all securities in a bank's trading account to be revalued on a quarterly basis and reported at the lesser of cost or prevailing market value. 12 C.F.R. § 18.6(c). When Grissom, as head of the investment division, did not wish to report a devaluation or loss on certain securities, he would "park" them with Hart during the reporting period at a price equal to their original cost to the bank. The transaction would be recorded as a "final" sale to Hart, and Grissom would not record his further agreement with Hart to repurchase the securities after the reporting period for the same price irrespective of their market value at the time of repurchase.

Grissom and Hart were indicted for parking transactions for the three reporting periods from December of 1972 to June, 1973. In each instance, the transactions were recorded as final sales to Hart, though the sales were actually subject to an undisclosed agreement to repurchase. The effect in each case was to inflate the profits of the investment division and to conceal losses on the parked securities. Subsequent to the last series of parking transactions in June of 1973, the practice was discovered by bank management, and Grissom was discharged.

Counts I (conspiracy), overt acts one (1) through nine (9) inclusive, II, IV, and VI refer to the when issued trading transactions, and Counts I, overt acts ten (10) through twenty-one (21), VIII, X, XII and XIII refer to the parking transactions.

 The record as to these counts disclos- es ample evidence from which the guilt of the defendants can be found. *U. S. v. Wolfenbarger,* 426 F.2d 992 (6th Cir. 1970). The crime of conspiracy is supported by substantial evidence establishing an unlawful agreement between the defendants, membership of both in the conspiracy, and the carrying out of one or more of the overt acts, charging the making of the entries in the books of the bank, in furtherance of the unlawful agreement. *U. S. v. Williams,* 503 F.2d 50, 54 (6th Cir. 1974); *U. S. v. Bostic,* 480 F.2d 965, 968 (6th Cir. 1973). Defendants do not deny the happening of the essential facts. They deny only their intent to deceive in the various when issued trading and parking transactions in which they engaged; hence they argue there were no false entries made or caused to be made by them in the books of the bank.

The record indicates otherwise. There was proof of multiple when issued trading transactions in which the entries in the books of the bank did not disclose Grissom's interest, and there were several parking transactions in which the sales were recorded as "final" to Hart when in fact Grissom, for the bank, had agreed to repurchase the securities involved at the sale price to Hart. The jury could and did find that the entries in the books of the bank which did not disclose Grissom's interest in the trading transactions or the real nature of Hart's interests in the parking transactions were false. *U. S. v. Bevans,* 496 F.2d 494, 498 (8th Cir. 1974); *U. S. v. Mayr,* 487 F.2d 67, 69 (5th Cir. 1973). There was ample evidence before the jury from which they could and in all likelihood did conclude that the various transactions could not have been completed had their real nature been revealed. *Crenshaw v. U. S.,* 116 F.2d 737, 739 (6th Cir. 1940). Under appropriate instructions the jury had evidence from which they could find that this conduct was intentional and that its purpose was to deceive the bank's officers and the Comptroller of the Currency and to advance the personal interests of the defendants. *King v. U. S.,* 249 F.2d 35 (6th Cir. 1957); *House v. U. S.,* 78 F.2d 296 (6th Cir. 1935); *Crenshaw v. U. S., supra.*

 The remaining contentions of the defendants are equally without merit. The jury was properly instructed and only they could resolve issues of credibility. No rights of the defendants were violated in any limitation that might have been imposed upon the defendants during trial in their communications with their counsel, nor did any abuse of discretion occur in this regard.

Accordingly, the judgment of the District Court is affirmed.