UNITED STATES of America, Plaintiff-Appellee,

v.

Lewie Frank TIDWELL, Defendant-Appellant.

No. 76–4205.

United States Court of Appeals, Fifth Circuit.

Sept. 14, 1977.

Rehearing and Rehearing En Banc Denied Nov. 1, 1977.

James G. Etheredge, Richard H. Black, Fort Walton Beach, Fla., for defendant-appellant.

Nickolas P. Geeker, U. S. Atty., Emory O. Williams, Jr., Asst. U. S. Atty., Pensacola, Fla., for plaintiff-appellee.

Before WISDOM, SIMPSON and TJOFLAT, Circuit Judges.

SIMPSON, Circuit Judge:

Appellant, Lewie Frank Tidwell, was convicted upon trial by jury under seven counts of an original ten-count indictment.[1] These counts fell into two groups: Counts One, Three, Five, Six and Seven alleged that Tidwell wilfully and knowingly issued various letters of credit, drawn against the credit of the Eglin National Bank, without authority of the Bank's board of directors, in violation of Title 18, U.S.C. § 1005. Counts Nine and Ten alleged that Tidwell wilfully and knowingly misapplied bank funds with the intent to injure and defraud the bank in violation of Title 18, U.S.C. § 656. Tidwell was sentenced to three years on each count, all sentences to run concurrently. In this appeal, he raises three points, one relating to the unauthorized issuance charges, the others to the misapplication of funds charges. We affirm

1. Count Two was dismissed for failure to state an offense and judgment of acquittal was entered as to Count Four when the government failed to introduce evidence to support it. The jury found Tidwell not guilty of Count Eight.

his conviction as to Counts Nine and Ten and do not reach the other counts under the concurrent sentence doctrine.

## I. THE FACTS

Tidwell was hired in September 1972 to serve as president of the Eglin National Bank. While in that position, he drew and issued several letters of credit for the benefit of different persons. At no time did he notify or seek approval from the board of directors with regard to these potential obligations. The unauthorized issuance of these letters of credit, including one in the amount of $43,500 to Marvin Chapman, formed the basis for Counts One through Seven.

Counts Nine and Ten involved a complex transaction in which several banks, principally Eglin and Merchants National of Mobile, loaned $600,000 to Marvin Chapman who offered as security two parcels of undeveloped land. In June 1974 Chapman approached Tidwell and offered 37 condominium units valued at $700,000 as additional collateral for his indebtedness if Eglin would do two things: (1) cover a check for $43,000 written by Chapman without sufficient funds, and (2) pay approximately $40,000 for the mortgage on the condominiums held by the Great American Mortgage Company. Tidwell contacted Merchants Bank and on July 17, 1974, Merchants credited Eglin's account in the amount of $85,000 to pay off the first mortgage on the condominiums. Tidwell applied $43,000 of these funds to cover Chapman's bad check, and attempted to pay off the mortgage with $38,000 of the remaining funds. Great American, however, refused Eglin's offer. In early August 1974, a $43,500 letter of credit issued to Chapman by Tidwell against Eglin's credit was called and required immediate payment. Tidwell used the remaining funds credited to Eglin's account by Merchants to pay this obligation. The payments on Chapman's bad check and his letter of credit formed the basis for Count Nine. Finally, after another intervening unsuccessful attempt, Tidwell was able to secure the first mortgage

for $41,562.61 which he paid out of Eglin's funds without approval or knowledge of the board of directors. This use of the bank's money formed the basis for Count Ten.

Tidwell urges two grounds for reversal of his conviction on Counts Nine and Ten: (1) that the trial judge's instruction concerning the "natural and probable consequences" of one's acts shifted the burden of proof to the defendant on the issue of intent, and (2) that the exclusion of evidence showing that the bank later foreclosed on the mortgage obtained by Tidwell seriously impaired his defense by not letting the jury know the actual consequences of Tidwell's acts. We find no merit to either of these arguments.

## II. THE "NATURAL AND PROBABLE CONSEQUENCES" INSTRUCTION

Tidwell claims that error occurred as a result of the following portion of the trial judge's instructions to the jury:

It is reasonable to infer that a person ordinarily intends the natural and probable consequences of his knowing acts. The jury may but is not required to draw the inference and find that the accused intended all of the consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from any intentional act or conscious omission. Any such inference drawn is entitled to be considered by the jury in determining whether or not the Government has proved beyond a reasonable doubt that the defendant possessed the requisite criminal intent. (T. 542)

This charge was duly objected to at the trial, preserving the point for appellate review.

This instruction bears little resemblance to that which was first condemned in *Mann v. United States,* 319 F.2d 404 (5th Cir. 1963), cert. denied, 375 U.S. 986, 84 S.Ct. 520, 11 L.Ed.2d 474 (1964), as impermissibly shifting the burden of proof to the defendant. In *Mann,* the trial judge had given the following charge:

"It is reasonable to infer that a person ordinarily intends the natural and proba-

ble consequences of acts knowingly done or knowingly omitted. So unless the contrary appears from the evidence, the jury may draw the inference that the accused intended all the consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from any act knowingly done or knowingly omitted by the accused."

*Id.* at 407. We held that the words "So unless the contrary appears from the evidence" shifted the burden of proof from the prosecution to the defendant to prove lack of intent. *Id.* at 409. No comparable language was included in the instant charge.

In addition to the lack of any burden shifting language, the instruction given falls within exceptions to the *Mann* rule developed by post-*Mann* cases in this Circuit. By repeatedly reminding the jury that the government bears the burden of proving beyond a reasonable doubt every element of the crime, the trial judge included adequate "curative provisions", in compliance with *United States v. Jenkins,* 442 F.2d 429, 438 (5th Cir. 1971). Also, testing the charge "as a whole and not by a single isolated sentence", we find no reversible error. *United States v. Duke,* 527 F.2d 386, 392–93 (5th Cir. 1976), cert. denied, 426 U.S. 952, 96 S.Ct. 3177, 49 L.Ed.2d 1190. Finally, the instant charge follows almost *verbatim* the charge which we approved in *United States v. Wilkinson,* 460 F.2d 725, 733 (5th Cir. 1972). Instead of using only the language approved in *Wilkinson,* "[t]he jury may draw the inference that the accused intended all of the consequences . . .", the trial judge here added that the jury "may *but it is not required to* draw the inference . . . " These additional words gave further assurance that the jury would understand the burden of proof to

which the prosecution is held. Although we do not now require an instruction more carefully worded than that set forth in *Wilkinson,* we favor the instant charge as a more effective way of avoiding the abuse condemned in *Mann.*

We hold that the instant charge did not shift the burden of proof on the issue of intent. The trial judge was careful to avoid such a result.

## III. EXCLUSION OF THE FORECLOSURE PROCEEDINGS

During the trial, Tidwell's counsel offered as evidence certified copies of the complaint and final judgment in a mortgage foreclosure action by the Eglin National Bank against Marvin Chapman. The trial judge, conceding relevance, sustained an objection to the introduction of this evidence on the ground that it was repetitious. T. 420–21. On appeal, Tidwell argues that exclusion of the evidence as to the mortgage foreclosure action was reversible error because it crippled his defense on the only issue in dispute with regard to the misapplication counts, namely, whether he misapplied the funds with an intent to injure and defraud the bank.

In *United States v. Mann,* 517 F.2d 259 (5th Cir. 1975), cert. denied, 423 U.S. 1087, 96 S.Ct. 878, 47 L.Ed.2d 97 (1976), we identified the four essential elements of a violation of 18 U.S.C. § 656:

> (1) that the accused was an officer, director, etc. of a bank,
>
> (2) that the bank was connected in some way with a national or federally insured bank,
>
> (3) that the accused wilfully misapplied the money, funds, etc. of said bank, and
>
> (4) that the accused acted with intent to injure and defraud said bank.[2]

**2.** The statute, which reads as follows, does not mention specific intent:

> *§ 656. Theft, embezzlement, or misapplication by bank officer or employee*
>
> Whoever, being an officer, director, agent or employee of, or connected in any capacity with any Federal Reserve bank, member bank, national bank or insured bank, or a

receiver of a national bank, or any agent or employee of the receiver, or a Federal Reserve Agent, or an agent or employee of a Federal Reserve Agent or of the Board of Governors of the Federal Reserve System, embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank or any moneys, funds, assets

It is well established that "the requisite intent can be inferred from the facts and circumstances shown at trial". *United States v. Tokoph*, 514 F.2d 597, 603 (10th Cir. 1975). This intent exists "if a person acts knowingly and if the natural result of his conduct would be to injure or defraud the bank even though this may not have been his motive". *United States v. Schmidt*, 471 F.2d 385, 386 (3d Cir. 1972). Furthermore, and as the trial judge properly instructed the jury,

> An intent to injure or defraud . . . is not inconsistent with a desire for the ultimate success and welfare of the bank . . . A wrongful misapplication of funds, even if made in the hope or belief that the bank's welfare would ultimately be promoted is none the less a violation of the statute, if the necessary effect is or may be to injure or defraud the bank.

*Golden v. United States*, 318 F.2d 357, 361–62 (1st Cir. 1963), citing *Galbreath v. United States*, 257 F. 648, 656 (6th Cir. 1918).[3] In accord with these principles, evidence that a Section 656 violation eventually worked to the bank's advantage does not negate the requisite intent:

> The ultimate or future possibility or probability of benefit to the bank is not a defense to a misapplication of funds at the time of purchase of the loans. The offense occurred and was complete when the misapplication took place. What might have later happened as to repayment is not material and could not be a defense.

*United States v. Acree*, 466 F.2d 1114, 1118 (10th Cir. 1972), cert. denied, 410 U.S. 913, 93 S.Ct. 962, 35 L.Ed.2d 278 (1973).

The ultimate ability of the Eglin Bank to foreclose on the Chapman mortgage, while not a defense, had at least colorable relevance to Tidwell's state of mind at the time of the misapplications involved. The issue before the jury was whether Tidwell at the time of misapplying the funds should have known that a natural result of his conduct would be to injure or defraud the bank. To this end, Tidwell was permitted to testify that he was able to secure $700,000 worth of collateral for $128,062.61, that he had "no choice" but to pay the Chapman letter of credit, that the "ultimate result" he intended "was to put the Eglin National Bank . . . in a much better secured position so that there would be no loss . . .", and that a first mortgage was in fact secured. T. 486–87. The jury could have interpreted this testimony as negating the requisite intent; it chose not to.[4] Evidence of the later foreclosure on the mortgage might have lent credibility to Tidwell's version of his state of mind at the time of misappropriation by tending to prove that Tidwell could not have known that his acts would have a natural tendency to harm the bank. To this extent the evidence was logically relevant. But it might also have induced the jury to decide the case on whether the bank suffered a pecuniary loss as a result of Tidwell's acts rather than on grounds material to the offense alleged.[5] Under the

---

or securities intrusted to the custody or care of such bank, or to the custody or care of any such agent, officer, director, employee or receiver, shall be fined not more than $5,000 or imprisoned not more than five years, or both; but if the amount embezzled, abstracted, purloined or misapplied does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.
Rather, the intent requirement has been judicially read into the statute on the basis of its legislative history. *See, e. g., United States v. Docherty*, 468 F.2d 989 (2d Cir. 1972).

3. In instructing the jury, the trial judge quoted verbatim from *Golden*. T. 541–42.

4. The judge instructed the jury on this point:

> In determining whether the defendant acted with intent to injure or defraud the bank it is not necessary that the evidence establish he personally profited by his acts or intended to do so. However, if he did not personally profit by his acts, such may be considered by you in determining his intent. T. 542.

5. Such a danger was clearly present in this case. The trial judge instructed the jury that "[i]t is not necessary, however, that actual injury to the bank be shown". T. 541. During its deliberations, the jury passed a note to the judge asking "Did the bank loose [sic] any money"? T. 551. In response to the note, the judge repeated his earlier instruction. T. 557.

Federal Rules of Evidence, the trial judge has broad discretion to exclude evidence where its probative value is substantially outweighed by such dangers as confusion of issues, misleading the jury, or needless presentation of cumulative evidence. Fed.R. Evid. 403. See *United States v. Johnson,* Slip opinion 5617, 558 F.2d 744 (5th Cir. 1977). Because such dangers were present in this case and the evidence offered had no more than attenuated probative value at best, we hold that the trial judge did not abuse his discretion by excluding the foreclosure evidence.

The conviction below as to Counts Nine and Ten was free from harmful error and will be affirmed.

## IV. THE UNAUTHORIZED ISSUANCE QUESTION

Counts One, Three, Five, Six and Seven alleged violations of Title 18, U.S.C. § 1005 in that Tidwell, as an officer of the bank, issued letters of credit of the bank without authority of the directors. The indictment did not allege that Tidwell issued these notes "with intent to injure or defraud" the bank, and the trial judge refused to instruct the jury that such intent is an element of the crime. Although the statute on its face does not require proof of intent to complete the offense of unauthorized issuance, Tidwell argues that Congress intended such a requirement but was careless in revising the statute.

In *Harrison v. United States,* 279 F.2d 19 (5th Cir. 1960), cert. denied, 364 U.S. 864, 81 S.Ct. 105, 5 L.Ed.2d 86, we held that "no specific intent to injure or defraud a bank is an ingredient in the offense charged in the first two paragraphs of Section 1005". *Id.* at 23. We reached this conclusion based on the words of the statute which "itself seems too plain to require judicial construction". Fifteen years later, however, in *United States v. Mann, supra,* 517 F.2d 259, we held that an intent to injure or defraud the bank was an implied element of the offense charged in 18 U.S.C. § 656. Both Sections 656 and 1005 are derived from the same statute, which was broken down and recodified in 1948. (Formerly 12 U.S.C. § 592). In light of this common origin, the Ninth Circuit reasoned that since it had earlier read an intent to injure or defraud into 18 U.S.C. § 656, "we must also read that requirement into the second paragraph of 18 U.S.C. § 1005". *United States v. Pollack,* 503 F.2d 87, 91 (9th Cir. 1974). Although the instant case falls squarely within *Harrison,* Tidwell contends that *Harrison* and *Mann* cannot be reconciled and urges that we adopt the view expressed by the Ninth Circuit in *Pollack.* To do this we would have to overrule *Harrison.*

As we have recently pointed out, "[t]he established policy of this Court is to recognize the binding effect of a prior decision by another panel of the Court subject only to a reversal of the Court sitting en banc". *McDaniel v. Fulton Nat'l Bank of Atlanta,* 543 F.2d 568, 570 (5th Cir. 1976). This policy would require us to affirm Tidwell's conviction on the unauthorized issuance counts if we reached them, leaving him free to petition for a rehearing en banc in order to urge reversal of *Harrison.*

However, as the case stands on appeal, it is unnecessary for us to reach the unauthorized issuance counts. Tidwell was sentenced to three years on each of the seven counts for which he was convicted, the sentences to run concurrently. Since we have affirmed his convictions as to Counts Nine and Ten, we need not decide the issue raised with regard to Counts One, Three, Five, Six and Seven pursuant to the concurrent sentence doctrine. Although we have jurisdiction to decide this issue, see *Benton v. Maryland,* 395 U.S. 784, 791, 89 S.Ct. 2056, 2060–61, 23 L.Ed.2d 707 (1969); *United States v. Stone,* 472 F.2d 909, 916 n. 5 (5th Cir. 1973), we decline to do so as a matter of judicial discretion under the criteria set forth in *United States v. Binetti,* 547 F.2d 265, 269 (5th Cir. 1977).

AFFIRMED.