Charles A. HEALY, Petitioner-Appellant,

v.

Ross MAGGIO, Jr., Warden, Louisiana
State Penitentiary,
Respondent-Appellee.

No. 82–3023.

United States Court of Appeals,
Fifth Circuit.

June 9, 1983.

W. Richard House, New Orleans, La.
(Court-appointed), for petitioner-appellant.

John H. Craft, Asst. Dist. Atty., New
Orleans, La., for respondent-appellee.

Before WILLIAMS and JOLLY, Circuit
Judges, and WILL *, District Judge.

E. GRADY JOLLY, Circuit Judge:

On June 6, 1975, a jury in the Criminal
District Court for the Parish of Orleans,
Louisiana, convicted Charles A. Healy of
second degree murder for the shooting of
Ida Helfrich. He was sentenced to life
imprisonment. His conviction was affirmed
on direct appeal by the Louisiana Supreme
Court, *State v. Healy,* 364 So.2d 1307 (La.
1978), and the denial of his subsequent peti-
tion for state habeas corpus relief was af-
firmed without comment by that court. He
then petitioned the federal district court
below for a writ of habeas corpus. That
court denied habeas relief, and Healy brings
this appeal.

* District Judge of the Northern District of Illi-     nois, sitting by designation.

On appeal, we are presented with two questions. First, was there insufficient evidence to support Healy's conviction on the charge of second-degree murder under the standard announced by the United States Supreme Court in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)? Second, were Healy's due process rights under the United States Constitution violated by a jury instruction that "[t]he law holds that a sane person is presumed to intend the natural and probable consequences of his deliberate act"?

For the reasons set forth below, we answer these questions in the negative. We therefore affirm the action of the district court in denying habeas corpus relief.

I.

In his original habeas application filed with the district court, Healy claimed that the evidence was insufficient to sustain his conviction for second-degree murder because the state failed to prove an essential element of the crime, namely, specific intent.[1] This issue was considered by the magistrate and by the district court. In the present appeal, however, Healy attempts to expand this issue by raising several alleged trial errors that were not presented to the district court, arguing that their combined effect influenced the jury's consideration of the case. The alleged errors include denial of Healy's pretrial request for inculpatory evidence later introduced by the state, qualification of a particular witness as an expert concerning the use and effect of the murder weapon, admission of prejudicial photographs of the victim, a comment by the prosecutor on Healy's failure to testify, and the arrest of a witness without good cause. Because none of these errors was presented in any form in Healy's habeas application to the district court, we will not consider them in this appeal. *Spivey v.*

*Zant,* 661 F.2d 464, 477 (5th Cir.1981). As a result, the only issue in relation to Healy's claim of insufficient evidence that is reviewable is precisely the one considered below: whether the state failed to prove the element of specific intent for the crime of second-degree murder under Louisiana law, thus presenting sufficient evidence to sustain Healy's conviction.

The appropriate standard of review in a federal habeas action resulting from a claim of insufficient evidence to support a state criminal conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia, supra,* 443 U.S. at 319, 99 S.Ct. at 2789.[2]

Evidence introduced by the prosecution at trial established that Healy and Ida Helfrich had been living together until approximately two months before her death. Before leaving his apartment on the night Ms. Helfrich was shot, Healy had armed himself with two pistols. Later that night, he met Ms. Helfrich at a local bar. After meeting her, Healy drove to his apartment house in Ms. Helfrich's car, where he left her bleeding in the car from a bullet wound to her head, and then went to his apartment where he removed his blood-stained clothes and washed blood from his arms. While at his apartment, Healy told his roommate that he had shot Ms. Helfrich by accident when he had slammed one of the guns against the car seat. Healy also asked his roommate to hide a gun for him. This gun was later shown to be the one which had wounded Ms. Helfrich. After dressing and placing the gun behind a bar in his apartment, Healy drove Ms. Helfrich to Charity Hospital where she later died from the bullet wound. At the hospital Healy related

---

1. Under Louisiana law (in effect at the time of the murder and also at present) second-degree murder is defined as the killing of a human being "when the offender has a specific intent to kill or inflict great bodily harm." La.Rev. Stat.Ann. § 14:30.1(1) (West 1974 & Supp. 1982).

2. Although Healy was tried in 1975, *Jackson* must be applied to his case. In *Holloway v. McElroy,* 632 F.2d 605, 639 (5th Cir.1980), *cert. denied,* 451 U.S. 1028, 101 S.Ct. ·3019, 69 L.Ed.2d 398 (1981), this court ruled that *Jackson* is to be applied retroactively.

another story to a police officer about the events of that night. He told the officer that he had been sitting on the steps of his apartment house when Ms. Helfrich had driven up in her car. After he had entered the car, Ms. Helfrich slumped over the steering wheel. He then drove her to the hospital.

Healy's story that Ms. Helfrich had been injured before she had picked him up was undermined by the testimony of a neurosurgeon. The neurosurgeon testified that Ms. Helfrich would have been incapable of driving with the type of wound she had suffered. The neurosurgeon's testimony also undermined Healy's story that the shooting was accidental. He testified that based on the manner in which the bullet entered her head, Ms. Helfrich's head would have had to be on the same plane as the gun. Consequently, if the shooting had occurred as Healy told his roommate, then Ms. Helfrich's left cheek had to be on the car seat at the time.

Healy did not testify and no witness was called on his behalf. The defense theory, as indicated by the cross-examination of the state's witnesses, was that the shooting was accidental. However, there was absolutely no evidence, except Healy's admissions to his roommate, contradicted by his admission

to the police officer the same night, that the homicide was accidental.

■ We conclude, after reviewing the evidence in the light most favorable to the prosecution, that any rational fact-finder could have found that the shooting and Ms. Helfrich's death were intentional rather than accidental and that Healy possessed the requisite specific intent. Our conclusion is based on Healy's inconsistent versions of the shooting, the neurosurgeon's testimony, and the evidence that before driving Ms. Helfrich to the hospital, he left her bleeding to death in the car while he tried to dispose of all incriminating evidence. "We reach this decision after giving due regard to the fact that under *Jackson,* we are to consider circumstantial as well as direct evidence, and that we are to assume that the jury drew all *reasonable* inferences from basic facts to ultimate facts." *Holloway v. McElroy, supra,* 632 F.2d at 641 (emphasis in original).

## II.

While giving jury instructions regarding intent, the state court instructed the jury that "[t]he law holds that a sane person is presumed to intend the natural and probable consequences of his own deliberate act." [3] Healy argues that the "presumed"

---

**3.** The intent instructions given at the trial are reprinted below, with omissions as indicated. The specific instruction which Healy challenges is italicized:

> The law with reference to specific intent to kill, or specific intent to inflict great bodily harm is as follows; Article 10 of the [Louisiana] Criminal Code provides:
> [language of Article 10 is omitted]
> However, intent being a condition of the mind is rarely susceptible to proof except by circumstantial evidence. For example, you cannot see, feel, touch, or hear intent. An intent in the doing of any particular act is usually proved by the sum total of acts, or conduct concomitant with or part of a transaction having as its ultimate end the achievement of a particular end or result.
> The law knows no specific time within which an attempt to kill, or an intent to inflict great bodily harm must be formed so as to make a homicide murder. If the will of the person accompanies the act a moment antecedent to the act, which causes the death, it shall be completely sufficient to

make the offense murder as if it were a day prior, or any other time. It is sufficient if there was a design or determination to kill, or a design or determination to inflict great bodily harm formed in the mind of the slayer at any moment before, or at the time of the fatal blow. If an assault is made upon a person not with the intent of killing him, but with the specific intent of inflicting great bodily harm upon him, and death is caused by such an assault, it is murder. *The law holds that a sane person is presumed to intend the natural and probable consequences of his own deliberate act.* Consequently, it is murder if a person intentionally assaults another in such a manner as would likely cause death, or likely cause serious bodily harm. In such cases it is necessary that the assault be of such a nature that it would likely cause death, or likely cause serious bodily harm. And, the death that resulted must have been the natural probable consequence of the intentional act or intentional acts.
> Specific intent to kill may be implied where there are no external signs for the intent

language in this instruction is a burden-shifting instruction on intent which was found to violate due process in *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

The *Sandstrom* case involved a direct appeal from a murder conviction and the jury instruction at issue stated that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts." Id. at 513, 99 S.Ct. at 2453. The Supreme Court held that "Sandstrom's jury may have interpreted the judge's instruction as constituting either a burden-shifting presumption ... or a conclusive presumption [and] either interpretation would have deprived defendant of his right to the due process of law ...." *Id.* at 524, 99 S.Ct. at 2459.

When applying *Sandstrom*[4] to determine whether due process rights have been violated as the result of jury instructions on intent, courts have made careful inquiry, as required by *Cupp v. Naughten,* 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973), to determine whether, taking the entire charge into consideration, there was any significant possibility that harm was done. See *United States v. Fricke,* 684 F.2d 1126, 1129 (5th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1250, 75 L.Ed.2d 480 (1983); *United States v. Spiegel, supra,* 604 F.2d at 968–70.

If we believe that a reasonable jury could have interpreted the instruction in either of the impermissible ways described in *Sandstrom,* we must then decide whether the "erroneous charge was harmless beyond a reasonable doubt." An erroneous instruction, even though it pertains to an element that was in issue at the trial, is harmless error if the evidence of guilt is so overwhelming that the error could not have contributed to the jury's decision to convict.[5] *Mason v. Balkcom,* 669 F.2d 222, 226 (5th Cir.1982) *cert. denied,* —— U.S. ——, 103 S.Ct. 1260, 75 L.Ed.2d 487 (1983); *Lamb v. Jernigan,* 683 F.2d 1332, 1342–43 (11th Cir.1982).

Here, the evidence of guilt was overwhelming. Healy, after arming himself with two pistols, met the deceased at a local bar. After she had been shot, Healy drove to his apartment, and left her in the car bleeding to death while he changed his blood-stained clothes and washed her blood from his person. While she lay fatally wounded in his car, he first tried to talk his roommate into hiding the pistol, before taking the time to hide it himself. It was not until Healy had completed his exculpatory efforts that he drove the deceased to a hospital where he gave a police officer an account of the incident which completely conflicted with the earlier story he had told his roommate. Testimony by a neurosurgeon established that it would have been physically impossible for the incident to have occurred according to the scenario suggested by Healy's admission to his roommate. Additionally, the neurosurgeon testi-

---

beyond the mere fact of the homicide itself, if there were no just grounds for the killing, when the killing was without provocation, or upon so slight a provocation as not to justify the killing. A specific intent to kill will also be implied in any deliberate cruel act consciously committed by one person against another. If, for instance, a man armed with a deadly weapon should suddenly with little or no apparent cause or provocation kill another, the law would presume that such a killing was deliberate and intentional, and done for the purpose of killing, or inflicting great bodily harm.

4. While not grounding our decision thereon, we note that this court in *United States v. Spiegel,* 604 F.2d 961, 969 n. 15 (5th Cir.1979), *cert. denied,* 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980), strongly indicated that *Sandstrom* was not to be applied retroactively. Because of

the way we dispose of this case, it is unnecessary for us to directly confront the yet undecided question in this circuit of the retroactivity of *Sandstrom.*

5. In *Connecticut v. Johnson,* —— U.S. ——, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983), affirming 185 Conn. ——, 440 A.2d 858 (1983), a plurality of the United States Supreme Court stated that an instruction given in violation of *Sandstrom* could only be considered harmless in certain "rare situations," neither of which is present here. Justice Powell, writing for the dissenters, stated that "the effect of the plurality's opinion, if it became a binding holding of the Court, would be to create an automatic reversal rule whenever a *Sandstrom*-type instruction was given, regardless of the conclusiveness of the evidence of intent."

fied that Healy's story to the police officer was also impossible to accept because of the severity of the wounds which the deceased had suffered. Healy did not testify and offered no witnesses to show that the homicide was other than intentional.

After reviewing the evidence presented at Healy's trial, we conclude that no reasonable juror could have determined from the evidence presented that Healy shot Ida Helfrich without the specific intent to kill or inflict great bodily harm. The evidence was so dispositive of intent that we can say beyond a reasonable doubt that the jury would not have found it necessary to rely on the presumption. Therefore, the instruction, even though erroneous, was harmless beyond a reasonable doubt.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.