**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Melvin Max MALONE, Defendant–Appellant.**

**No. 86–1385.**

United States Court of Appeals, Fifth Circuit.

Jan. 29, 1988.

---

**19.** I find it hard to believe that anyone would contend the lawyer's action constituted malpractice.

Kevin R. Bartley, Gary C. Riley, Bartley & Riley, Odessa, Tex., for defendant-appellant.

James Blankinship, Richard H. Kamp, Asst. U.S. Attys., Helen M. Eversberg, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before THORNBERRY, GEE and JONES, Circuit Judges.

ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES

THORNBERRY, Circuit Judge:

Melvin Max Malone was convicted in district court of several crimes related to financial improprieties committed while he was the president of Permian Bank and Trust in Odessa, Texas. In an unpublished opinion, this court affirmed his conviction. *United States v. Malone*, 816 F.2d 675 (5th Cir.1987). On petition for writ of certiorari in the Supreme Court, however, the government changed its position concerning the interpretation of one of the statutes under which Malone had been convicted. As a result, the Supreme Court vacated our judgment and remanded to this court for "further consideration in light of the position presently asserted by the Solicitor General in his brief filed October 5, 1987." *Malone v. United States*, —— U.S. ——, 108 S.Ct. 278, 98 L.Ed.2d 239 (1987).

The only issue remaining in this case is Malone's conviction on counts 9 and 11 for violating 18 U.S.C. § 1005, para. 2.[1] The government's change of position does not affect our resolution of the other issues originally raised by Malone. Insofar as they are concerned, we reaffirm our previous decision.

I.

The two counts of the indictment at issue in this case charged Malone with willfully issuing a bank obligation without authority. Malone contends that the district court

---

1. Section 1005 provides in full:

Whoever, being an officer, director, agent or employee of any Federal Reserve bank, member bank, national bank or insured bank, without authority from the directors of such bank, issues or puts in circulation any notes of such bank; or

Whoever, without such authority, makes, draws, issues, puts forth, or assigns any certificate of deposit, draft, order, bill of exchange, acceptance, note, debenture, bond, or other obligation, or mortgage, judgment or decree; or

Whoever makes any false entry in any book, report, or statement of such bank with intent to injure or defraud such bank, or any other company, body politic or corporate, or any individual person, or to deceive any officer of such bank, or the Comptroller of the Currency, or the Federal Deposit Insurance Corporation, or any agent or examiner appointed to examine the affairs of such bank or the Board of Governors of the Federal Reserve System—

Shall be fined not more than $5,000 or imprisoned not more than five years, or both.

As used in this section, the term "national bank" is synonymous with "national banking association"; "member bank" means and includes any national bank, state bank, or bank or trust company, which has become a member of one of the Federal Reserve banks; and "insured bank" includes any state bank, banking association, trust company, savings bank, or other banking institution, the deposits of which are insured by the Federal Deposit Insurance Corporation.

erroneously failed to instruct the jury that it must find that he acted with intent to deceive or defraud the bank or another individual.

When we first considered Malone's appeal, we held that his argument was foreclosed by *Harrison v. United States*, 279 F.2d 19 (5th Cir.1960). In *Harrison*, the trial court instructed the jury in a Section 1005 case that "a person intends the usual and probable consequences of his act." We noted that this instruction was improper when specific intent to defraud was an element of the crime. *Id.* at 24. But we also held that "even a casual reading of this section makes plain that no specific intent to injure or defraud a bank is an ingredient in the offense charged in the first two paragraphs of Section 1005." *Id.* at 23. As a result, the trial court's error in giving the burden-shifting presumption was harmless. Because Malone was charged in the present case with violating paragraph two of Section 1005, we held that *Harrison* clearly applied and specific intent was not an element of his offense.

In the Supreme Court, however, the Solicitor General said that *Harrison* was wrongly decided.[2] Shorn of any requirement of specific intent to defraud, the first two paragraphs of the section contain no mens rea requirement at all. Yet the conduct addressed by the two paragraphs—for example, a bank officer's decision to issue a note—is hardly the kind of inherently dangerous activity that Congress would be likely to regulate with a strict liability criminal statute.

The Solicitor General also pointed to the Ninth Circuit's analysis in *United States v. Pollack*, 503 F.2d 87 (9th Cir.1974). The court in that case faced the exact question decided by this circuit in *Harrison*. In a detailed examination of the legislative history, *Pollack* rejected *Harrison*'s conclusion and held that the omission of an expressly required mental state in Section 1005 was a legislative oversight. *Id.* at 90–91. The court therefore held that Sec-

tion 1005 did require a specific intent to defraud or deceive.

If this were a novel issue, we might adopt the position of the Solicitor General and the Ninth Circuit. We note, however, that in the absence of intervening Supreme Court or en banc precedent, one panel of this court is without power to overrule an earlier decision by another panel. Although the Court did vacate our earlier judgment in this case, it did not indicate its opinion on the merits of the *Harrison* issue. Fortunately, we need not decide today whether we may overrule *Harrison* because any error in failing to instruct the jury on specific intent to defraud was harmless.

## II.

The district court told the jury that it must find Malone acted "willfully," meaning "[a]n act ... done voluntarily and intentionally, and with the specific intent to do something the law forbids. That is to say with bad purpose, either to disobey or disregard the law." The district court refused Malone's requested instruction, which required the jury to find that he acted with intent to deceive or defraud the bank or another individual.

In *Healy v. Maggio*, 706 F.2d 698 (5th Cir.1983), this court considered the harmless error doctrine in the context of a violation of *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). *Sandstrom* barred jury instructions containing a presumption that might shift the burden of proof to the defendant on an element of the crime. *Healy* held, however, that "[a]n erroneous instruction, even though it pertains to an element that was in issue at the trial, is harmless error if the evidence of guilt is so overwhelming that the error could not have contributed to the jury's decision to convict." *Id.* at 701; *see also Mason v. Balkcom*, 669 F.2d 222, 226–27 (5th Cir. Unit B 1982), *cert. denied*, 460 U.S. 1016, 103 S.Ct. 1260, 75 L.Ed.2d 487 (1983).

---

**2.** The Solicitor General also noted that, on these facts, the omission of an instruction on specific intent to defraud might be harmless error.

In the present case, an instruction pertaining to an element in issue at the trial—specific intent—was arguably erroneous. As in *Healy*, however, we are persuaded that the evidence of guilt was overwhelming.

The record disclosed ample uncontradicted evidence of Malone's scheme to deceive state and federal bank examiners and the directors of Permian Bank about the extent of the bank's nonperforming loans. On two occasions, Malone arranged for the temporary transfer of large nonperforming loans from Permian Bank to other banks. The transfers removed the loans from Permian's books during inspections by bank examiners. Before the other banks would accept the nonperforming loans, Malone had to issue "take-out commitments," which obligated Permian to again assume the loans a short time later, when the danger from the examiners' inspection had passed. Malone never sought approval of the bank's board for issuance of the commitments, and he omitted any mention of the commitments in his answers to federal questionnaires.

The evidence of Malone's scheme came from several sources, and our examination of the record disclosed virtually no contradictory evidence. Thus, we are satisfied that this case meets the *Healy* standard, and any error in the court's instructions to the jury could not have contributed to the verdict.

### III.

We do not decide whether the district court's instructions in this case were error. We hold only that if there was any error, it was harmless. The judgment of the district court is therefore

AFFIRMED.