ENGEL, Circuit Judge.
Appellants Elton E. Larkin, Jr. and Joseph G. Cooper were convicted of conspiring to misapply the funds of the National Bank of Commerce in Memphis, Tennessee, in violation of 18 U.S.C. § 656 (1976).[1] Larkin was lending officer for the bank and Cooper was the ultimately unsuccessful candidate for his party’s nomination .for election to Congress. The scheme alleged in the indictment involved means of circumventing both bank policy and the bank’s express *1081 directions in order to funnel money to Cooper, whose shaky financial condition had prompted other bank officers to cut him off from receiving any further loans and even to prevent his maintaining a checking account at the bank.
The testimony at the trial showed that the bank had a written policy whereby all unsecured loans of $4,000 or more had to be supported by a current financial statement. In addition, any loans in excess of $10,000 had to be approved by a loan committee, and could not be made by a loan officer individually. The responsibility for referring loans to the committee rested with the loan officer. The limitation of $10,000 which a loan officer might extend, acting alone, applied to the aggregate debt of any individual. The evidence showed that while representing to the other officers that Cooper had no account at the bank, Larkin was at the same time approving substantial overdrafts on checking accounts which Cooper continued to maintain at the bank. It also showed that Larkin and Cooper took great pains to keep the outstanding balance at any time due on Cooper’s individual accounts below the $10,000 amount, presumably so that it would not be discovered. The most substantial misapplication of funds occurred, however, in a series of thirteen loans to persons other than Cooper but for the benefit of his individual account and of his account as a political candidate. In each instance third parties purportedly applied for loans and the checks issued by the bank were then endorsed to Cooper or the proceeds were given to him and deposited in his accounts. Each of these loans was approved by Larkin. Although several of the loans were in excess of $4,000, only one was supported by a financial statement which appeared in the named borrower’s loan file. With respect to one borrower, Paul Kelley, Larkin approved a loan of $6,144.66, although Kelley had never had previous dealings with the bank and had not submitted a financial statement. In fact, Kelley and Larkin never had any contact, and Cooper acted as an intermediary between Kelley and Larkin in arranging the loan. An additional loan of $3,793.32 was also made to Kelley and approved by Larkin under the same circumstances. The proofs also showed that Cooper advised Kelley at the time that he would repay the loans. On another occasion, a loan of $3,533.70 was made to Theresa Kaplan, Cooper’s nineteen-year-old baby sitter. Miss Kaplan testified that she was unaware that she was taking out the loan in her own name and simply thought that she was co-signing a note; Cooper reassured her at the time that he would repay the note himself. Miss Kaplan actually signed the note in Cooper’s apartment and was advanced the monies without filling out a loan application. She never, in fact, met with Larkin or provided the bank with information concerning her financial condition; her only act was to fill in and to sign the note. The proofs showed that the date of birth which she had written on the note had been altered to reflect an age of twenty-nine, rather than her actual age of nineteen.
Finally, Cooper’s former wife, Barbara Ivy, borrowed $3,000 in her own name on Cooper’s instructions and then turned the proceeds over to Larkin.[2] Mrs. Ivy testified that Larkin agreed personally to satisfy the debt, which he later did.
THE INSTRUCTIONS
The defendants raise several objections to the instructions to the jury, claim *1082 ing that they presented an inaccurate version of the law of misapplication.
Although the misapplication statute no longer explicitly requires an intent to injure or defraud the bank,[3] cases consistently hold it to be an element of the crime. E. g., Logsdon v. United States, 253 F.2d 12 (6th Cir. 1958); United States v. Tidwell, 559 F.2d 262, 265-66 & n.2 (5th Cir. 1977), cert. denied,-U.S.-, 98 S.Ct. 1520, 55 L.Ed.2d 538 (1978). Because the term “misapplies” is not specifically defined in the statute and because in common understanding it has a somewhat different connotation from that of fraud generally, the courts have had difficulty agreeing upon an adequate jury instruction covering the offense, especially with respect to the nature of the culpability required for a violation.
With respect to the intent, the defendants particularly object to the following instruction given by the district court:
An intent to injure or defraud a bank exists if a person acts knowingly, and if the actual result of his conduct would be to injure or defraud the bank even though this may not have been his motive. (Emphasis added.)
Both defendants claim that the above language allowed the government to satisfy its burden to prove intent by creating a presumption of intent which arises from proof of an act.[4]
A substantially similar instruction was approved by the First Circuit in Golden v. United States, 318 F.2d 357 (1st Cir. 1963).[5] Another circuit, however, has rejected it. In United States v. Arthur, 544 F.2d 730, 736-37 (4th Cir. 1976), the Fourth Circuit disapproved a nearly identical charge. See also United States v. Caldwell, 544 F.2d 691, 696 (4th Cir. 1976).
The difficulty, as pointed out both in Arthur and Caldwell, is that the challenged instruction would appear to require rather than merely to permit a jury inference of intent from a finding that the natural result of the conduct was to injure or defraud. In so doing, it is argued, the defense was effectively precluded from convincing the jury that the defendant, in fact, lacked the requisite intent even though the natural result of the conduct may have been to injure or defraud.[6]
While our circuit has not yet been required to pass upon the express language of the instruction given here, it has recognized that a jury may permissibly infer an intent to injure from the fact of injury, if such injury is a natural result of an act of the defendant. See Logsdon v. United States, supra, 253 F.2d at 15. In Galbreath v. United States, 257 F. 648 (6th Cir. 1918), our court, while holding that it was for the jury to determine whether the intent existed under the evidence, observed:
An intent to injure or defraud, as contemplated by the statute, is not inconsist *1083 ent with a desire for the ultimate success and welfare of the bank. It may, within the meaning of the law, result from an unlawful act voluntarily done, the natural tendency of which may have been to injure the bank. A wrongful misapplication of funds, even if made in the hope or belief that the bank’s welfare would ultimately be promoted, is none the less a violation of the statute, if the necessary effect is or may be to injure or defraud the bank.
Id. at 656.
In a recent Fifth Circuit decision, United States v. Tidwell, supra, the following instruction was expressly approved:
It is reasonable to infer that a person ordinarily intends the natural and probable consequences of his knowing acts. The jury may but is not required to draw the inference and find that the accused intended all of the consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from any intentional act or conscious omission. Any such inference drawn is entitled to be considered by the jury in determining whether or not the Government has proved beyond a reasonable doubt that the defendant possessed the requisite criminal intent.
559 F.2d at 264.
We find the foregoing instruction distinctly preferable to that given by the court in this case. At the same time, however, we do not find the trial judge’s instruction here, considered in the context of the evidence and with the other careful instructions given, to be so prejudicial as to affect the substantial rights of the defendant and require reversal.[7]
In addition to the instruction on intent, the trial court carefully instructed the jury on the burden of proof and presumption of innocence and explained with particularity the elements of the substantive offense. The court informed the jury that negligent banking practices themselves would not amount to misapplication under the statute and further instructed that misapplication was a specific intent crime:
To act with intent to defraud means to act wilfully and with the specific intent to deceive or cheat, ordinarily for the purpose of either causing some financial loss to another, or bringing about some financial gain to ones (sic) self. However, the evidence in the case need not establish that the bank was actually defrauded, but only that the accused conspirator acted with intent to defraud.
Cooper objects to that portion of the trial judge’s instructions which stated that “acts knowingly done with a reckless disregard for the interests of the bank may justify a finding of intent to defraud or injure the bank.” The instruction is consistent with our court’s express holding that a reckless disregard will support an inference of intent to injure. Logsdon v. United States, supra, 253 F.2d at 15.
Appellants further claim that the trial court erred in giving the following example of what would constitute an intent to misapply within the meaning of the statute:
*1084 An intent to misapply may occur from a number of different acts such as . . . an officer knowingly granting loans to persons who have been assured the loans will be repaid by others, that is, where the debtor allowed only his name to be used, enabling the bank officials to grant a loan to a party to whom the bank was unwilling for some reason to grant a loan in his own name; approving loans or overdrafts to a borrower contrary to the directions of his superior officers at the bank not to do so.
The appellants urge that the above charge allowed the jury to find them guilty upon proof that Larkin authorized loans to persons whose credit was otherwise good and who intended to stand behind the loans, but who used the money so gained for the benefit of Cooper, who was himself unable to secure credit on his own behalf. Larkin in particular contends that the effect of the court’s example was to apprise the jury that it was a violation of the statute simply to co-sign or guarantee a loan. The instruction, they claim, is substantially similar to one which United States v. Gens, 493 F.2d 216 (1st Cir. 1974), held reversible.[8] The appellants in Gens were convicted of wilfully misapplying funds of a bank upon proof that defendant Gens, with the knowledge and cooperation of other bank officials, succeeded in obtaining funds in excess of the bank’s self-imposed loan limit of $80,-000 by persuading other individuals to borrow in their own names and to turn the proceeds over to him, where he himself could not have borrowed the money directly. The First Circuit ruled that where the borrower is himself solvent and understands his obligation to repay, no violation of the statute is shown:
[Wjhere the named debtor is both financially capable and fully understands that it is his responsibility to repay, a loan to him cannot — absent other circumstances — properly be characterized as sham or dummy, even if bank officials know he will turn over the proceeds to a third party. Instead, what we really have in such a situation are two loans: one from the bank to the named debtor, the other from the named debtor to the third party. The bank looks to the named debtor for repayment of its loan, while the named debtor looks to the third party for repayment of his loan. If for some reason the third party fails to make repayment to the named debtor, the latter nonetheless recognizes that this failure does not end his own obligation to repay the bank. In this situation, the bank official has simply granted a loan to a financially capable party, which is precisely what a bank official should do. There is no natural tendency to injure or defraud the bank, and the official can not be said to have willfully misapplied funds , in violation of § 656.
493 F.2d at 222 (footnote omitted).
While we agree that the example cited in the district court’s instructions could have been more carefully drafted, we do not agree that it conveys the meaning urged by the appellants. Some of the borrowers *1085 whom Cooper induced to obtain loans were capable of making repayment and may, in fact, have understood that if Cooper defaulted on his promise to them to satisfy the loans, they would be personally responsible for repayment. At the same time there was proof in the record to support the example given and a finding that the person borrowing the money had been assured that he or she would not be responsible for its repayment. Cooper’s babysitter, Theresa Kaplan, testified that she could not repay the loan and' that Cooper misled her into believing that she was not obligated to pay even though she was the sole signer. The evidence also established that Paul Kelley had borrowed close to $10,000 from the bank for Cooper’s benefit, although he was financially incapable of making repayment. The proofs also fully support the view that Larkin acted recklessly and, by inference, intentionally[9] in approving the loans without investigating the applicants’ abilities to repay and by disregarding the bank’s internal policy regarding financial statements. The evidence also supports the conclusion that Larkin intentionally and repeatedly approved overdrafts in Cooper’s individual and campaign accounts. According to bank policy, overdrafts are a form of unsecured loan, and Larkin had been notified that Cooper was forbidden to receive further credit.
Considering the state of the record, we conclude that the jury was not misled in its application of the statute to the defendants’ prejudice. While what is precisely encompassed in the term “misapplication” may be subject to continuing judicial refinement, the jury had to understand from the instructions that at the least it meant deceitful and dishonest mishandling of bank funds, contrary to the express instructions and policy of the bank itself.
Unlike the defendants in Gens, Cooper and Larkin were not charged with committing or aiding and abetting a substantive violation but with a conspiracy, and it was not necessary that any overt act charged in a conspiracy indictment constitute in and of itself a separate criminal offense. United States v. Scallion, 533 F.2d 903, 911 (5th Cir. 1976), cert. denied, 429 U.S. 1079, 97 S.Ct. 824, 50 L.Ed.2d 799 (1977); United States v. Sterkel, 430 F.2d 1262, 1263 (10th Cir. 1970); see United States v. Van Hee, 531 F.2d 352, 357 (6th Cir. 1976).
Defendant Larkin complains that the district judge committed reversible error in failing to give the following proffered instruction:
. in order to justify a verdict of guilty based upon circumstantial evidence you must find from the circumstantial evidence offered, that it is consistent with guilt and inconsistent with innocence and where the evidence as to the element of a crime is equally consistent with the theory of innocence as with the theory of guilt then that evidence necessarily fails to establish guilt beyond a reasonable doubt and you should find the defendant not guilty.
Larkin claims that the requested charge is supported by our decision in United States v. Leon, 534 F.2d 667 (6th Cir. 1976). His reliance upon Leon is misplaced. Leon did not rule upon instructions to the jury but rather involved the sufficiency of the evidence itself to support the jury verdict, an issue for the court and not for the jury. We see no value in attempting to transform a test for sufficiency of the proof into an instruction to the jury. See 1 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 15.02 at 443 (3d ed. 1977). Such an instruction poses a likelihood of needless confusion and, as tendered by Lar-kin, closely resembles one expressly rejected by the Supreme Court and by our court to the effect that to convict the defendant, the evidence must exclude every reasonable hypothesis other than that of guilt. Holland v. United States, 348 U.S. 121, 139-40, 75 S.Ct. 127, 99 L.Ed. 150 (1954); see United States v. Van Hee, supra, 531 F.2d at 357-58, and cases cited therein.
*1086 While appellants urge that the trial court erred in several other respects, both in the instructions it gave and in the instructions which it refused, we do not find sufficient merit in those claims to warrant discussion.
PROSECUTORIAL MISCONDUCT
During the course of closing arguments, the Assistant United States Attorney on rebuttal made the following comment:
Mr. Kuhn [Cooper’s attorney] said I was dishonest in not calling all these other borrowers. In the first place, that’s not true. I guess in the second place I should just consider that Mr. Kuhn is a hired gun, hired to say things like that.
Cooper’s attorney, toward whom the foregoing remark was directed, made no objection, perhaps because the comment was provoked by an equally intemperate remark of his own. The attorney for Larkin, however, objected on behalf of his client but was overruled.
We have repeatedly emphasized our disapproval of the intemperate use of personally abusive language by counsel in the course of criminal trials. See, e. g., United States v. Leon, supra, 534 F.2d at 678-83. While there is appeal in Larkin’s argument that two wrongs do not make a right, but of. United States v. Hoffa, 349 F.2d 20, 50-51 (6th Cir. 1965), aff’d, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), at the same time not every departure from proper courtroom decorum commands reversal and a new trial. Here there was no factual misrepresentation in the statements, nor could the jury have concluded that the prosecutor intended anything more than a figure of speech. Moreover, the objectionable remark was directed not against Larkin himself but against his co-defendant’s counsel. We hold the misconduct to have been harmless.
SELECTIVE PROSECUTION
Prior to the trial, Cooper moved the court to dismiss the indictment on the basis that he was the victim of selective prosecution. The apparent basis for the claim was his argument that he was singled out for prosecution while the other participants, those persons who had actually made the nominee loans, escaped. As noted by the Eighth Circuit in United States v. Crow Dog, 532 F.2d 1182, 1195 (8th Cir.), cert. denied, 426 U.S. 917, 96 S.Ct. 2620, 49 L.Ed.2d 370 (1976), this issue is essentially an equal protection question:
It is well established that a reasonable prosecutorial discretion is inherent in our judicial system, . . . and that such discretion does not amoimt to unconstitutional discrimination unless it is deliberately based upon an unjustifiable standard such as race, religion or other arbitrary classification . . . . (Citations omitted).
Accord, United States v. Strutton, 494 F.2d 686, 688 (2d Cir. 1974); see Oyler v. Boles, 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962). The proofs and the offers of proof made by Cooper in support of his motion totally fail to show that the decision to prosecute him was made in bad faith and was based upon impermissible considerations. United States v. Crow Dog, supra, 532 F.2d at 1196; United States v. Berrios, 501 F.2d 1207, 1211 (2d Cir. 1974). As pointed out by Judge Lambros in United States v. Perkins, 383 F.Supp. 922, 928 (N.D.Ohio 1974):
Government attorneys have great latitude in deciding which potentially criminal actions to prosecute. The discretion, if not exercised on a class basis which affects Constitutional guarantees or which is designed to punish the exercise of protected rights is not reviewable by the courts and does not furnish a basis for dismissal of prosecutions.
COOPER’S OTHER DEALINGS
At the outset of the trial, the government introduced a number of witnesses from other banking institutions in the Memphis area who testified to Cooper’s financial transactions with them. The purport of the testimony was to show that Cooper was a poor financial risk who de *1087 faulted on loans, wrote bad checks, and at least on one occasion executed a false financial statement for the purpose of securing a loan from the Beneficial Finance Company. Cooper claims that he was directly prejudiced by the evidence, while Larkin charges that the evidence tended to show that he was associating with a person of ill repute and of bad personal character.
Rule 404(b) of the Federal Rules of Evidence states a flat prohibition against character evidence unless the proponent can demonstrate a basis of relevancy other than the inference that the person acts in conformity with his other bad acts:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
We agree with the government’s position that the evidence was indeed relevant and admissible as proof both of Cooper’s motive for conspiring with Larkin and as showing fraudulent intent which necessarily had to be proved as part of the elements of the offense. He badly needed the money and had exhausted all the legitimate sources of credit. His willingness to falsify a financial statement to obtain money from the Beneficial Loan Company tends to prove his specific intent to defraud in conspiring with Larkin to obtain money from the National Bank of Commerce. See United States v. Miller, 573 F.2d 388 (7th Cir. 1978). It was also relevant proof showing that the alteration of the age of the babysitter from nineteen to twenty-nine in connection with her application was not the product of a mistake or accident. Contrary to the circumstances in United States v. Ring, 513 F.2d 1001 (6th Cir. 1975), Cooper’s specific intent was very much in issue, even though he himself did not testify.
The real issue, as we see it, is not whether the evidence was relevant and admissible, which it was, but whether it was plain error for the trial judge to have failed to give a limiting instruction concerning the jury’s consideration of it. This, both counsel claim, requires reversal.
In addition to making a general objection to the introduction of the evidence concerning Cooper’s other financial speculations, counsel specifically objected to the proof of the false financial statement which Cooper gave to obtain the loan from Beneficial. As counsel for Cooper stated:
I have a standing objection as to this series of witnesses, but I would like for you to instruct the jury with respect to this witness that they cannot consider the fact of filing a false financial statement against the defendant in any way because it is a direct crime under the Act which governs false financial statements and this is the only relevancy of introducing the financial statement of Beneficial, is to introduce the possibility of another crime or grounds against another situation which is an additional crime and he has already voiced it and I would appreciate it if you would tell them not to consider that information as to the guilt or innocence of the defendant.
The trial judge refused to instruct the jury as requested and likewise denied the motion, made by both defendants, for a mistrial because of it.
As proposed, the instruction did not request the court to limit the jury’s consideration of the evidence to questions of motive or intent, but rather to disregard it altogether. Because the evidence was probative of motive and intent, the instruction was properly denied. The question, therefore, is whether the district judge was obliged to give a limiting instruction where none was requested and if so, whether his failure to do so was plain error demanding reversal. We conclude it was not.
The application of Rule 404(b) is as varied as the cases in which it may be invoked. Contrary to the government’s suggestion here, we cannot agree that it is limited only to evidence of other crimes, for its own language also speaks of “wrongs or acts”. Conceivably within the broad lan *1088 guage of the rule is any conduct of the defendant which may bear adversely on the jury’s judgment of his character. United States v. Miller, supra, 573 F.2d at 392. While the general bad character of a defendant may be relevant as tending to make more likely the fact that he would be guilty of the crime than would a person of good character, see Fed.R.Evid. 401, Rule 404(b) requires evidence of other conduct to have an independent basis of relevancy, such as proof of motive or intent. Relevancy and culpability, coupled with unjust prejudice, are matters of degree which necessarily have a bearing on whether to admit evidence of a defendant’s other wrongful acts. See Fed.R.Evid. 403. These varying considerations strongly suggest that the decision in each case should rest in the sound discretion of the trial judge and that on appeal that discretion should not be disturbed unless it has been abused.
Defendants especially stress our decisions in United States v. Poston, 430 F.2d 706 (6th Cir. 1970), and United States v. Ailstock, 546 F.2d 1285 (6th Cir. 1976), as authority that it was plain and reversible error to fail to give a cautionary instruction limiting the jury’s consideration of the evidence, even if it was not error to deny a motion for a mistrial. In United States v. Poston we held that it was plain error for the district court to have failed to instruct the jury to disregard altogether the unsolicited testimony of an FBI agent to the effect that the defendant was on probation. Judge Peck commented:
As in Tallo [v. United States, 344 F.2d 467 (1st Cir. 1964)], we do not here conclude that the motion for a mistrial in the present case need necessarily to have been sustained, nor do we hold that a corrective admonition could not have had curative effect. We recognize the salutatory (sic) rule that empowers the trial judge to exercise discretion in determining what curative instruction is required (subject, of course, to appellate approval of his exercise of discretion on review), and hold only that when during a jury trial evidence of the fact that at the time of the alleged offense for which the defendant is on trial he was on probation, and no corrective or cautionary instruction concerning that evidence given to the jury, prejudicial error has intervened.
430 F.2d at 709.
In United States v. Ailstock, supra, Judge Weick, citing Poston, held that it was plain error for the district court to fail to give a cautionary instruction where the jury had been informed that the defendant had previously been in prison, adding
. we do not find that the failure of appellants’ counsel to request a cautionary instruction excused the District Court from its duty to give such an instruction.
546 F.2d at 1291.
The difference between the facts in Po-ston and Ailstock and those here is apparent. The evidence that the defendant had been on probation or had been previously in prison was not only more prejudicial in its impact; the evidence was not admissible for any purpose.[10]
Here, of course, the evidence was both relevant and admissible. From our examination of the rule in other circuits, only the District of Columbia Circuit appears to hold that it is plain and reversible error for the trial court to fail sua sponte to give a cautionary instruction regarding evidence of prior misconduct. In United States v. McClain, 142 U.S.App.D.C. 213, 440 F.2d 241 (1971), a divided panel determined it was plain error to fail to caution the jury where the proofs showed that the defendant had been guilty of a prior assault on his wife, at least “in the absence of manifest waiver” by defense counsel. Id. 142 U.S.App.D.C. at 218, 440 F.2d at 246. However, in United States v. Bobbitt, 146 U.S.App.D.C. 224, 450 F.2d 685 (1971), the same circuit held that it was not plain and reversible error where the district judge failed to limit a jury’s *1089 consideration of evidence of threats made by the defendant to the deceased twelve years before the homicide. The authorities in the other circuits uniformly hold that failure to give a cautionary instruction is not plain error. United States v. Pitman, 475 F.2d 1335, 1338 (9th Cir.), cert. denied, 414 U.S. 873, 94 S.Ct. 146, 38 L.Ed.2d 92 (1973); United States v. Baldivid, 465 F.2d 1277, 1281 (4th Cir.), cert. denied, 409 U.S. 1047, 93 S.Ct. 519, 34 L.Ed.2d 499 (1972); United States v. Van Poyck, 464 F.2d 575, 577 (5th Cir. 1972), aff’d without opinion, 488 F.2d 551 (5th Cir. 1973); United States v. DeLaMotte, 434 F.2d 289, 294 (2d Cir. 1970), cert. denied, 401 U.S. 921, 91 S.Ct. 910, 27 L.Ed.2d 825 (1971); United States v. Carter, 401 F.2d 748, 750 (3d Cir. 1968), cert. denied, 393 U.S. 1103, 89 S.Ct. 905, 21 L.Ed.2d 797 (1969). In accord with the prevailing view, our circuit held that it was not plain error to fail to give a cautionary instruction in a prosecution under the Hobbs Act where the government introduced proof of the defendant’s bad reputation for the limited purpose of showing that the victim of the threats acted out of fear and that his fear was reasonable. United States v. Faulkner, 538 F.2d 724, 728 (6th Cir. 1976).
We acknowledge that it would have been the better part of discretion for the court sua sponte to have given a cautionary instruction limiting the jury’s consideration of the evidence. See generally Fed.R.Evid. 105. While it may well be that defense counsel concluded under the circumstances that a cautionary instruction would only serve to emphasize the admissible aspects of the evidence, we retain enough confidence in the intelligence of a jury to believe that its deliberations and even the court’s impartial role would be better served by giving the instruction, though not requested. Since the impact on a defendant’s substantial rights varies with the facts of each case, we do not go so far as to hold that plain error may never result from the failure to give a cautionary instruction where the conduct shown is more egregious and its particular relevance is less apparent. Cf. United States v. Garcia, 530 F.2d 650, 654-56 (5th Cir. 1976) (impeachment evidence).
None of the other alleged errors has sufficient merit to warrant extensive discussion. The trial judge did not abuse his discretion in denying Larkin’s request for a bill of particulars, United States v. McGuire, 347 F.2d 99 (6th Cir.), cert. denied, 382 U.S. 826, 86 S.Ct. 59, 15 L.Ed.2d 71 (1965), especially since the defendant altogether failed to show any surprise and actual prejudice. Turner v. United States, 426 F.2d 480 (6th Cir. 1970), cert. denied, 402 U.S. 982, 91 S.Ct. 1646, 29 L.Ed.2d 148 (1971).
Likewise it was not error for the trial judge to have permitted the jury to have a written copy of the indictment, especially where, as here, the jury was fully instructed that it could not consider the indictment as evidence of the crime itself. If it was error for the jury to have been furnished a copy of the subpoena duces tecum, it was harmless since the subpoena simply listed the documents already identified by a bank officer and in evidence.
Affirmed.

. Section 656 provides in part:
Whoever, being an officer, director, agent or employee of, or connected in any capacity with any Federal Reserve bank, member bank, national bank or insured bank, or a receiver of a national bank, or any agent or employee of the receiver, or a Federal Reserve Agent, or an agent or employee of a Federal Reserve Agent or of the Board of Governors of the Federal Reserve System, embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank or any moneys, funds, assets or securities intrusted to the custody or care of such bank, or to the custody or care of any such agent, officer, director, employee or receiver, shall be fined not more than $5,000 or imprisoned not more than five years, or both; but if the amount embezzled, abstracted, purloined or misapplied does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

. The secretive nature of this action was brought out by the former wife’s testimony:
Q. Did you eventually sign a note borrowing money from the National Bank of Commerce Bank?
A. Yes, sir, where I worked was right next door to the branch that Mr. Larkin worked at, and during my lunch hour I went over there, the papers were filled out, I just had to sign my name and he gave me a cashier’s check for the three thousand dollars and told me to go over to the cashier’s window and get it cashed.
And, you know, I said I’m not going to walk around with three thousand dollars cash. And he said don’t worry about it, just drive your car over a couple of blocks away to the empty parking lot in the back and I will meet you up there and take the money off your hands.

. Compare the current statute, note 1 supra, with the former version, Act of September 26, 1918, ch. 177, § 7, 40 Stat. 972.

. The court’s instruction appears to have been lifted nearly verbatim from the opinion in United States v. Schmidt, 471 F.2d 385, 386 (3d Cir. 1972), quoted with approval, United States v. Beran, 546 F.2d 1316, 1321 (8th Cir. 1976). See also United States v. Boedker, 389 F.Supp. 360, 366 (M.D.Pa.1974). None of the cases cited, however, addresses the propriety of a particular charge.

. “Now, intent, of course, is a mental process, and you can’t see inside a man’s mind. More or less, you can ascertain his intent by his conduct, and the results of his conduct. The intent to injure or defraud must not necessarily have been the purpose for the doing of the act, as long as the natural result of that conduct would be to injure or defraud the bank.”
Golden v. United States, supra, 318 F.2d at 361.

. The government seeks to discredit the disapproval in Arthur as dicta. Because the Fourth Circuit reversed the conviction in Arthur on other grounds, it properly declined to rule whether the error in the instruction rose to the level of plain error which the court could notice on appeal in the absence of an objection in the district court. The opinion, however, carefully noted error in the instruction to guide the district court in retrying the defendant. While the government is technically correct in characterizing the court’s disapproval as dicta since it was unnecessary to the decision, it was not the casual, offhand observation which the term dicta usually connotes.

. In United States v. Denton, 336 F.2d 785 (6th Cir. 1964), we disapproved an instruction on intent which stated:
It is reasonable to infer that a person ordinarily intends the natural and probable consequences of acts knowingly done or knowingly admitted. So unless the contrary appears to you from the evidence, you may draw the inference that Mr. Denton intended all the consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from any act knowingly done or knowingly omitted by him.
Id. at 788.
Noting that the instruction had been vigorously criticized by the Fifth Circuit in Mann v. United States, 319 F.2d 404 (5th Cir. 1963), cert. denied, 375 U.S. 986, 84 S.Ct. 520, 11 L.Ed.2d 474 (1964), and also observing that the instruction was “at best clumsy”, we nevertheless declined to find reversible error, concluding that under the circumstances the instruction failed to affect any substantial right of the defendant.

. As the First Circuit’s opinion explains:
In its charge to the jury, the trial court first stated that the government’s theory of willful misapplication was as follows:
“ . . that Defendant Gens dominated and controlled Defendants Porter and Carle-ton [two bank officers] or at least worked in concert with them to arrange loans to the persons named in each count in the indictment, knowing that such person was not the true borrower and that Defendant Gens was to be the true beneficiary thereof, and that each of such persons was used as the borrower either with or without the knowledge and consent of the common borrower in order to disguise the concentration of the bank’s funds to Defendant Gens.”
The court then instructed the jury that it had to find that appellants “misapplied or caused to be misapplied money, funds, or credits of the bank by granting a loan for the amount and to the person named in the particular count so that these funds could be converted to the use of Defendant Richard H. Gens.” These two excerpts from the charge were the only descriptions instructing the jury as to the acts which it could find constituted willful misapplication. On this basis, the jury found each appellant guilty on all eight counts.
493 F.2d at 221.

. Logsdon v. United States, supra, 253 F.2d at 15.

. See also United States v. Wiley, 534 F.2d 659 (6th Cir. 1976), where the government agent brought before the jury a claim that Wiley had dealt in stolen merchandise, conduct which clearly had no relevance to the crime with which he was charged.