## UNIVERSITY OF NORTH DAKOTA, Appellee,

v.

## UNITED STATES of America, Appellant.

No. 78–1852.

United States Court of Appeals,
Eighth Circuit.

Submitted April 20, 1979.

Decided July 25, 1979.

Murray S. Horwitz, Atty., Tax Division, Dept. of Justice, Washington, D.C., argued, for appellant; M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Crombie J. D. Garrett and Mr. Horwitz, Washington, D.C., and James R. Britton, U.S. Atty., Fargo, N.D., on brief.

Garry A. Pearson of Pearson & Christensen, Grand Forks, N.D., argued and filed brief, for appellee.

Before LAY, HEANEY and McMILLIAN, Circuit Judges.

LAY, Circuit Judge.

■ This is an appeal by the United States from a judgment of the district court, the Honorable Paul Benson presiding, awarding the University of North Dakota a refund of withholding taxes paid for the years 1970 and 1971. The issue is whether contributions made by the University to the North Dakota State Employees Retirement Program pursuant to salary reduction agreements constituted wages subject to withholding under I.R.C. § 3401(a)(12)(A). The district court ruled that the amounts contributed were not wages and therefore not subject to withholding.[1] We affirm.

The North Dakota statutes governing the North Dakota State Employees Retirement Program (Plan) require both employers and employees to make contributions to the

---

1. The district court's opinion is reported at 461 F.Supp. 741 (D.N.D.1978).

Plan. For the tax years in question employees' contributions were set at four per cent of their monthly pay; employers were required to make a matching contribution.[2] In 1970 and 1971 University employees executed a form entitled "Authorization for Salary Reduction."[3] Pursuant to the authorizations each employee's salary was reduced by the amount of his contribution to the Plan and the University's contribution was increased by a like amount. The sole purpose of these salary reduction agreements was to defer taxation on all contributions made to the Plan. The University did not withhold or collect any withholding taxes on any portion of the amounts transmitted pursuant to the salary reduction agreements.

The taxpayer argues that the increased contributions were "on behalf of an employee . . ." to a plan qualified under I.R.C. § 401(a) and thus are not wages subject to withholding under I.R.C.

2. N.D. Cent. Code §§ 54–52–05, 54–52–06 (amended 1977).

3. AUTHORIZATION FOR SALARY REDUCTION

Effective the first day of _____, 19____ please reduce my monthly base salary by the amount indicated below, and at the same time increase the University's contribution to my retirement annuity by a corresponding amount, it being understood that during the effective period of this authorization there will be no deductions made from salary for my contributions to the University retirement plan.
*Amount of Salary Reduction*
Please check item 1 or 2.
(1) The amount that would otherwise be deducted from my basic monthly salary as my annuity contribution in accordance with the University retirement plan.
or
(2) Do not reduce my salary. I will continue to make annuity contributions under the University retirement plan through salary deductions, as heretofore.
Signed ____ [employee]
Date _____
NOTE: This election is irrevocable until one year from the effective date. Any change thereafter must be made by completion of a new authorization form at least one month before the effective date of the change, and will be applicable only to earnings on or after the effective date of the change.

4. In relevant part the statute reads:

§ 3401(a)(12)(A).[4] As the district court noted the question ultimately depends on state law and turns on the proper interpretation of N.D. Cent. Code § 54–52–05. That statute provides that "each member [of the Plan] shall be assessed and required to pay monthly four percent of the monthly salary or wage paid to him, and such assessment shall be deducted and retained out of such salary in equal monthly installments."[5] The Government argues that because § 54–52–05 requires employee contributions to be withheld from their pay, the additional amounts transmitted by the University pursuant to the salary reduction agreements constitute wages subject to withholding. The district court rejected that argument on the grounds that the North Dakota State Board of Higher Education (State Board), which is charged by the North Dakota Constitution with the responsibility for the control and administration of state institutions of higher learning in North Dakota,[6] had

[T]he term "wages" means all remuneration . . . for services performed by an employee for his employer . . ., except that such term shall not include remuneration paid—

(12) . . . on behalf of, an employee or his beneficiary—
(A) . . . to a trust described in section 401(a) which is exempt from tax under section 501(a) at the time of such payment

I.R.C. § 3401(a)(12)(A).

5. For the tax years in question the University was required to make a matching contribution drawn from its own funds not to exceed five hundred dollars annually. N.D. Cent. Code § 54–52–06 (amended 1977). It is not disputed that the University's mandatory contribution pursuant to § 54–52–06 is not subject to withholding.

6. N.D. Const. art. 54, § 6(b) reads in part:
The . . . State Board of Higher Education shall have full authority over the institutions under its control with the right, among its other powers, to prescribe, limit, or modify the courses offered at the several institutions. In furtherance of its powers, the State Board of Higher Education shall have the power to delegate to its employees details of the administration of the institutions under its control. The said State Board of Higher Education shall have full authority to organize or re-organize within constitu-

the power to authorize, and did authorize, the University to modify the terms of the Plan, notwithstanding the language of § 54–52–05. The district court reasoned that because the State Board's authority is derived from the state constitution, "its administrative powers may not be limited by statute." [7] 461 F.Supp. at 747.

The Government challenges the district court's holding that the State Board had the "power" to modify the terms of § 54–52–05. Relying on *Nord v. Guy*, 141 N.W.2d 395 (N.D.1966), the Government urges that the State Board exceeded its authority by authorizing the University to alter the terms of the Plan expressed by the legislature in § 54–52–05.[8]

■ Although we disagree with the rationale used by the district court, i. e., the State Board had the *power to modify* the statute,[9] we uphold its finding that the State Board did not encroach upon the legislature's power in authorizing the salary reduction plan in an attempt to provide a tax benefit to its employees.

■ The legislative purpose behind Chapter 54–52 was to provide a pension plan for state employees and to establish the amount to be contributed to the Plan. The only thing mandatory about § 54–52–05 is that the contribution be made in the amount set forth. The precise manner in which the contributions are made falls within the administrative discretion of the State Board. *Cf. Joint School District No. 1 v. United States*, 577 F.2d 1089 (7th Cir. 1978).[10] Since the salary reduction agreements result in the same contributions being made to the Plan the State Board is only executing the law. As *Nord v. Guy* makes clear, execution of the law, as long as it complies with the legislative purpose, is not the exercise of legislative power.

The Government relies on a number of decisions involving federal and local government retirement programs which hold that statutorily mandated employee contributions to such programs are includable in the employee's gross income in the year the contributions are made. *E. g., Cohen v. Commissioner*, 543 F.2d 725 (9th Cir. 1976);

tional and statutory limitations, the work of each institution under its control, and do each and everything necessary and proper for the efficient and economic administration of said State educational institutions.
*See also* N.D. Cent. Code §§ 15–10–11, 15–10–17.

7. The district court noted that only the power of the State Board to organize or reorganize the work of the institutions under its control may be limited by statute. 461 F.Supp. at 747 n. 3. See note 6, *supra*.

8. In *Nord v. Guy*, the court sustained a constitutional challenge to legislation that permitted the State Board to issue general obligation bonds for the purpose of providing and equipping facilities at state-supported institutions of higher education. One of the challenges to the legislation was that the legislature improperly had delegated legislative power to the State Board. In reviewing that challenge the court was guided by the following:
     It is difficult, if not impossible, to lay down exactly the line that marks the distinction between administrative and legislative functions. As was said by the Supreme Court of the United States in *Mutual Film Corporation v. Industrial Commission*, 236 U.S. 230, 35 S.Ct. 387, 59 L.Ed. 552, Ann.Cas. 1916C, 296: "While administration and legislation are

quite distinct powers, the line which separates exactly their exercise is not easy to define in words. It is best recognized in illustrations. *Undoubtedly the Legislature must declare the policy of the law and fix the legal principles which are to control in given cases; but an administrative body may be invested with the power to ascertain the facts and conditions to which the policy and principles apply.* If this could not be done there would be infinite confusion in the laws, and in an effort to detail and particularize, they would miss sufficiency both in provision and execution."
141 N.W.2d at 400 (emphasis added).

9. Surely it cannot be argued that the State Board could require only a six per cent contribution to the plan rather than follow the legislative mandate of eight per cent.

10. In *Joint School District, supra*, the court was aided by a Wisconsin Attorney General's opinion reasoning that the duty created by a similar statute could be modified. The fact that the Seventh Circuit's decision can be distinguished on that basis does not alter the obvious purpose of the North Dakota legislature in establishing a retirement plan.

*Hogan v. United States*, 513 F.2d 170 (6th Cir.), *cert. denied*, 423 U.S. 836, 96 S.Ct. 62, 46 L.Ed.2d 55 (1975); *Megibow v. Commissioner*, 218 F.2d 687 (3d Cir. 1955); *Miller v. Commissioner*, 144 F.2d 287 (4th Cir. 1944); *Feistman v. Commissioner*, 63 T.C. 129 (1974). From these cases the Government argues "that the *statutorily required* [§ 54–52–05] employee contributions are includable in the gross income of the employees, and thus, are subject to federal withholding taxes." (Emphasis added.) The flaw in the Government's argument, however, is that the district court ruled that the State Board had the discretion to authorize a salary reduction program so that direct employee contributions to the Plan were no longer statutorily required.

Instructive is the legislative history of § 1015 of the Employee Retirement Income Security Act of 1974, I.R.C. § 414,[11] where we find the following pertinent discussion:

> Under present law, contributions which are designated as employee contributions are generally treated as employee contributions for purposes of the Federal tax law. For example, this is the case with respect to employee contributions under the Federal Civil Service plan. . . . This provision provides that amounts that are contributed to a qualified plan are not to be treated as an employer contribution if they are designated as employee contributions.
>
> This provision gives effect to the source of the contributions, as designated in the plan. For example, if the appropriate committees of the Congress were to report legislation regarding employee contributions under the Federal Civil Service plan so that the present employee's contributions would become employer contributions under the Federal Civil Service plan (and that legislation were to be enacted), then those contributions would constitute employer contributions to the plan, which would be excludable from the employee's income when made. *The same rule would apply to State and local governmental plans which now designate contributions as employee contributions, if the appropriate governmental bodies change the provisions of their plans.*

(Emphasis added.)

H. R. Rep. No. 93–807, 93rd Cong., 2d Sess., *reprinted in* [1974] U.S. Code Cong. & Admin. News, pp. 4670, 4810, *quoted with approval in Hogan v. United States*, 513 F.2d at 175. The effect of the district court's holding is that the appropriate governmental body, i. e., the State Board, has altered the provisions of the Plan by the salary reduction agreements so that the challenged contributions now are designated as employer contributions. Thus the cases on which the Government relies are distinguishable.

It is also relevant to note the legislative history of § 2006 of the Employee Retirement Income Security Act of 1974, Pub. L. No. 93–406, 88 Stat. 829. Prior to December 6, 1972, the Internal Revenue Service

---

11. The University argues that I.R.C. § 414(h)(2) and *Joint School District, supra*, support its position under federal law, contending that the salary reduction plan here is similar to the "pick up" plan approved by the Seventh Circuit. Section 414(h) reads:

(1) In general.—Effective with respect to taxable years beginning after December 31, 1973, for purposes of this title, any amount contributed—

(A) to an employees' trust described in section 401(a), or

(B) under a plan described in section 403(a) or 405(a), shall not be treated as having been made by the employer if it is designated as an employee contribution.

(2) Designation by units of government.— For purposes of paragraph (1), in the case of any plan established by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing, where the contributions of employing units are designated as employee contributions but where any employing unit picks up the contributions, the contributions so picked up shall be treated as employer contributions.

Salary reduction plans are distinguishable from "pick up" plans. In any event § 414(h)(2) is effective only for taxable years beginning after December 31, 1973.

had permitted employees to exclude from income amounts contributed to a qualified pension program by their employers where the source of the amounts contributed was the employee's agreement to take a reduction in salary. On that date the IRS issued proposed regulations that would have changed that result by providing that amounts contributed to such a plan in return for a reduction in salary would be considered to be an employee contribution and consequently taxable income to the employee. Congress responded by enacting § 2006, which provided a temporary freeze on the status quo. H. R. Conf. Rep. No. 93–1280, 93rd Cong., 2d Sess., *reprinted in* [1974] U.S. Code Cong. & Admin. News, pp. 5038, 5134–35. Except for plans in existence on June 27, 1974, Congress directed that a contribution made before January 1, 1977, to a qualified trust "shall be treated as a contribution made by an employee if the contribution is made under an arrangement under which the contribution will be made only if the employee elects to receive a reduction in his compensation or to forego an increase in his compensation." Employee Retirement Income Security Act of 1974, Pub. L. No. 93–406, § 2006(a), 88 Stat. 892, 992. With respect to plans in existence on June 27, 1974, Congress also prohibited the Secretary of the Treasury from implementing any salary reduction regulations in final form before January 1, 1977, and further directed that such plans be administered without regard to the proposed salary reduction regulations and in the manner in which such law was administered before January 1, 1972. *Id.,* § 2006(b), (c).[12]

The University argues that § 2006 specifically recognizes that its salary reduction plan was permissible under federal law during the years in question to defer taxation of the challenged contributions. The Government argues that the University is not protected by the statute because the University's plan was not "in existence" within the meaning of § 2006.[13] We need not resolve this question here since the Government did not raise the applicability of § 2006 before the district court.[14] *Katsev v. Coleman,* 530 F.2d 176 (8th Cir. 1976).

The judgment of the district court is affirmed.

---

12. Section 2006 was amended in 1978 to extend the date for salary reduction regulations in final form to January 1, 1980. Act of Nov. 8, 1978, Pub. L. No. 95–615, § 5, 92 Stat. 3097.

13. Specifically the Government contends that the University's "salary reduction plan" was neither "reduced to writing" nor "approved" as required by the statute. See H. R. Conf. Rep. No. 93–1280, *supra,* at 5135.

14. The designated record of the district court contains no reference by the Government to federal law. The district court wrote:

[The Government's] position throughout this case has never drawn into question the permissibility of salary reduction terms under federal law. Rather, [the Government] has relied entirely on state law, contending that N.D. Cent. Code § 54–52–05 requires direct employee contributions to the State Employees Retirement Plan through salary deductions and thus does not permit tax-deferred payments through salary reductions. 461 F.Supp. at 747 n. 2.